## White's Estate.   White's Appeal.   Buckley's Appeal.

[Marked to be reported.]

*Will—Condition subsequent—Decedents' estates—Conclusiveness of decree.*

Testator died leaving to survive him four children, and a grandson, a son of a deceased daughter. He gave a specific sum to a trustee, the income of which was to be paid over to the executors who were to use so much of it as they might deem sufficient to maintain and educate the grandson until he should arrive at the age of twenty-five years. After the grandson reached that age the whole of the income was to be paid to him. At the death of the grandson the principal was to be paid to his lawful issue, or, in default of which, to testator's children. By a codicil testator directed that " should any attempt be made at law or otherwise," during the minority of his grandson, to withdraw the latter's person from the custody of testator's executors by the boy's father or any other person, the executors were to suspend all further payments, and all provision for the grandson was revoked. After testator's death some correspondence took place between the grandson's father and testator's executors, the result of which was the voluntary surrender of the boy to the custody of

his father. The executors subsequently filed an account, and, upon the application of the executors and testator's four children, the attorney for the executors was appointed auditor. Although the whereabouts of the grandson and his father were known, no notice was given to either of them of the proceedings, and it was stated to the court that the petitioners for the appointment of the auditor were all the parties interested in the estate. The auditor distributed the whole estate, including the fund left in trust to the grandson, to testator's four children, and his report was confirmed by the court. *Held :*

(1) That the decree of distribution was not conclusive upon the grandson.

(2) That testator did not mean by the words " any attempt " in the codicil, a surrender as the result of correspondence, but that he meant successful attempts made with force or at law.

(3) That the grandson had no right to any income withheld from him by the executors, in the exercise of their discretion, before his twenty-fifth year, but he was entitled to all the income accruing after he reached the age of twenty-five years.

Conditions subsequent by means of which the estate of a legatee may be forfeited by the acts of persons over whom he has no control, and for whose conduct he is not responsible, are not regarded with favor by the courts, and will not be enforced when they can be reasonably relieved against.

Argued March 28, 1893. Reargued Jan. 24, 1894. Appeals, Nos. 290 and 307, Jan. T., 1893, by William R. White and J. Henry Hentz, executors of William R. White, deceased, and by William W. Buckley, from decree of O. C. Phila. Co., Oct. T., 1891, No. 230, distributing estate of William R. White, deceased. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ., on argument. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ., on reargument. Affirmed.

Petition for citation.

From the petition, answers and proofs, it appeared that William R. White died in Philadelphia, Oct. 23, 1868. He left surviving four children, William R. White, M. Clementine Borie, the wife of Henry P. Borie ; Henry C. White and C. Brooke White, the latter at the date of his father's death being a minor. Anna B. White, a daughter, had married George D. Buckley in 1865. She died Nov. 19, 1867, leaving surviving her a husband, George D. Buckley, and a son, William White Buckley, born July 25, 1866.

On Feb. 14, 1868, testator was appointed by the orphans' court of Berks county guardian of the person and estate of his grandson, William White Buckley. Testator's will, dated June 29, 1868, provided inter alia as follows:

" Item. I give and bequeath unto any one of the life insurance, annuity and trust companies of the city of Philadelphia, to be designated by my executors, the sum of fifty thousand dollars, or such securities out of my estate as may equal that amount in value, and which said sum or securities as my executors may determine, with full power on the part of said company to invest the same, and to change the same or the said investment from time to time as they may deem advisable, and in trust out of the annual income and proceeds of said investment to pay over unto either of my executors, or unto such persons as they may order and direct from time to time, so much of the same as my said executors may deem sufficient to maintain and educate my grandson, William Buckley (son of my deceased daughter), suitably to his relationship to me until he shall arrive at the age of twenty-five years, and on and after his arrival at that age, then pay over unto him the said annual income and proceeds of said investment during his natural life, and after his death, should he leave lawful issue, then in trust to pay over to such issue the whole of the principal and whatever increase there may be, the charges and expenses of the execution of this trust being always first deducted, and I direct that the said income to be paid to my grandson shall not be subject to any debt or obligation that he may contract, nor shall he have the power to assign, mortgage or incumber the same in any manner or way howsoever, but the same shall be paid into his own hands as it may accrue and become payable. But should my grandson die without leaving. lawful issue, then and in such case I direct the principal and all unpaid income accruing from said investment shall be divided among my four children, M. Clementine Borie, Henry C. White, William R. White and C. Brooke White, share and share alike, and to whom I give and bequeath in such case the same." Testator left the residue of his estate to his four children.

On Aug. 25, 1868, testator made a codicil to his will as follows : " I, William R. White, do make this codicil to my last

will and testament: Whereas, by said will and testament, I
have bequeathed unto such one of the life insurance and trust
companies of the city of Philadelphia the sum of $50,000, in
trust, that such trust company should, after deducting all ex-
penses of executing the same trusts, pay over the net income
thereof unto my executors during the lifetime of my grandson,
William W. Buckley, and after his decease to pay over the
principal, with all accumulations thereto, to my said executors,
to be by them disposed of as I have in my said will directed,
to employ so much of the said income as they, or the survivors
of them, consider proper to clothe and educate my said grand-
son suitably to his relationship to me.; now I do, confirming
hereby all the directions relative to said sum of $50,000, fur-
ther order and direct that should any attempt be made at law
or otherwise, during the minority of my said grandson, to with-
draw his person from the charge and custody of my said ex-
ecutors by his father or any other person, then and in such case
I hereby direct my executors to suspend all further payments
aforesaid, and in such case I hereby revoke all provisions for
such grandson by my said will."

The will and codicil were probated in the register's office in
Philadelphia, Oct. 29, 1868, and letters testamentary granted
unto the executors therein named, to wit: William R. White,
a son; Henry P. Borie, a son-in-law, and J. Henry Hentz, the
business partner of testator.

After testator's death William W. Buckley lived in the family
of Henry P. Borie, one of the executors. George D. Buckley,
his father, made an unsuccessful attempt to remove his son.
He then employed counsel, and a correspondence ensued be-
tween the executors and the father's attorney, which resulted
finally in the voluntary surrender of the boy to his father. The
executors' attorney in delivering the child wrote that "to prevent
any misunderstanding hereafter," he would state " that the ex-
ecutors are willing and desire to retain the child; that he is
not delivered voluntarily but solely in consequence of Mr.
Buckley's attempt to take him from their custody by force, and
to avoid a recurrence of such scenes and threatened litigation."
The boy was then removed to a western state, and his present
residence is in Lawrence, Kansas.

In 1870, the executors filed their account in the orphans'

court. Appended to this account, as filed, were the following request and affidavit:

" The undersigned parties interested in the settlement of the estate of William R. White, deceased, and being all the children of the said decedent and the executors, respectfully suggest the name of James W. Paul, Esq., as the auditor to audit, settle and adjust the account of the said executors and to report distribution of the balance in their hands."

This was signed by H. P. Borie, Wm. R. White, J. Henry Hentz, executors, and Wm. R. White, M. C. Borie, Henry C. White, C. Brooke White.

" Henry P. Borie, being duly sworn, says that the persons who have signed the above request, together with The Pennsylvania Company for Insurances on Lives and Granting Annuities, whose written assent is hereunto annexed, are all the parties who are interested in the settlement of the estate of William R. White, deceased."

The account was duly referred by the orphans' court to James W. Paul, Esq., as auditor, to audit, settle and adjust the same, and to report distribution of the balance in the hands of the executors. This reference was made June 17, 1870.

On Oct. 7, 1870, Mr. Paul, as auditor, filed his report, in which he set forth that he had given due advertisement of the time and place of meetings for audit, in accordance with law. He stated the facts connected with the removal of the grandson, William W. Buckley, and further set forth, in his report, the provisions of the will and codicil concerning said grandson. He reported further that by reason of the facts which he stated, the legacy was annulled and had become void. He reported a distribution, in favor of the four children, of the whole residuary estate, and set forth the items of assets payable to each.

On Oct. 7, 1870, the report thus filed was confirmed nisi. On Oct. 21, 1870, it was confirmed absolutely.

Within a year after the confirmation of this report, distribution was made in accordance therewith, by payments to the several parties, of the sums which had been severally awarded to them.

A portion of the estate remained undistributed. On May 24, 1876, a second, and practically final account, was filed in the orphans' court. By this account it appeared that the larger

portion of the amount therein accounted for had been distributed to testator's four children.

On Nov. 2, 1891, William W. Buckley presented his petition in the orphans' court for a citation upon the executors to account. Answers were filed by the executors, and proofs taken.

The court, in an opinion by PENROSE, J., 2 Dist. R. 207, awarded the petitioner interest on fifty thousand dollars from July 25, 1891. The following decree was entered:

" And now, Jan. 16, 1893, in accordance with the opinion of the court filed Jan. 7, 1893, the court do order and decree that William R. White, and J. Henry Hentz, surviving executors of the last will of William R. White, deceased, shall forthwith designate a trustee in accordance with the provisions of the fifth item of the said will (in which item a trust is created for William W. Buckley, grandson of the testator), and that said executors shall forthwith pay unto such trustees so appointed by them, or in default of such appointment by them, then to such trustee as may be appointed by the court, the sum of fifty thousand dollars, to be held by such trustee upon the trusts and as and for the purposes specified in said item of said will.

" And it is further ordered and decreed that said executors shall forthwith pay unto William W. Buckley lawful interest upon said sum of fifty thousand dollars, to be computed as from the 25th day of July, 1891, to the date of the payment of said principal sum to such trustee.

" And said executors are further directed to pay the costs of this proceeding."

*Errors assigned* by the executors were (1) in decreeing payment to trustee ; (2) in directing payment to W. W. Buckley of interest; (3) in failing to dismiss petition ; (4) in not decreeing legacy null and void; (5) in not decreeing that its former decrees barred petitioner's rights.

*Errors assigned* by W. W. Buckley were (1) in holding that the will made no disposition of the surplus income accruing during appellant's minority, and during the years preceding his attaining the age of twenty-five, on the fund of $50,000 bequeathed for his use by testator ; (2) in holding that appellant was not entitled to the surplus income accrued prior to his

twenty-fifth birthday, and that it properly belonged to the residuary legatees of the testator;. (3) in not awarding to appellant the income accrued prior to the twenty-fifth birthday, July 25, 1891.

*John G. Johnson*, for Wm. R. White and J. Henry Hentz.— The condition subsequent was valid. Its nonperformance defeated, in favor of the residuary legatees, the legacy of $50,000: Adams v. Adams, 45 Ch. Div. 426; Gilliland v. Bredin, 63 Pa. 393; McIlvaine v. Gethen, 3 Whart. 575; Mickey's Ap., 46 Pa. 337; Hoopes v. Dundas, 10 Pa. 75; Chew's Ap., 45 Pa. 228; Carr's Est., 138 Pa. 352; Colston v. Morris, 1 Jacob, 257; Dickson's Trust, 1 Simons, N. S. 43; Theobald on Wills, 450; Cravan. v. Brady, L. R. 4 Eq. 209; and L. R. 4 Ch. Ap. 298; 2 Jarman on Wills, ed. 1893, 63; Jenner v. Turner, 16 Ch. Div. 195; Astley v. Earl of Essex, L. R. 18 Equity, 297.

The confirmation of the executor's account in 1870 was final and is now irreversible: Cramp's Ap., 81 Pa. 90; Acts of March 29, 1832, P. L. 193; Feb. 24, 1834, P. L. 80; June 16, 1836, P. L. 792; Oct. 13, 1840, P. L. 184; May 19, 1874, P. L. 207; Moorhead's Est., 1 Chester Co. R. 436; Schaeffer's Ap., 119 Pa. 644; Woodward's Est., 2 Chester Co. R. 9; Jones's Ap., 99 Pa. 130; Bagg's Ap., 43 Pa. 512; Russell's Ap., 34 Pa. 258; Lehr's Ap., 10 W. N. 282; Stewart's Ap., 86 Pa. 149; Kost's Ap., 107 Pa. 143; Clothier's Est., 20 W. N. 379; Fletcher's Ap., 125 Pa. 352.

The confirmation of the executors' account in 1876 was final and is now irreversible: Guenther's Ap., 4 W. N. 41; Kline's Ap., 86 Pa. 363; Chandler's Ap., 100 Pa. 265; Leslie's Ap., 63 Pa. 355.

The condition imposed by the codicil was not a condition subsequent, and the law which governs in the case of the latter class of conditions is not applicable: Donohue v. McNichol, 61 Pa. 73; Theobald on Wills, 399; 2 Bl. Com. 154; Egerton v. Earl of Brownlow, 4 H. L. C. 1.

There was no gift of any income to William White Buckley, directly, saving that which should accrue after his attainment of the age of twenty-five.

Under the will, until Buckley should attain the age of twenty-five, the executors could only demand and appropriate so much

of the income as, from time to time, they might deem sufficient for his maintenance and education. Their discretion as to the amount to be appropriated could not be coerced.

Even though the codicil imposed a condition subsequent which was invalid, it still imposed such requirements concerning the maintenance and education of the grandson as made it the duty of the executors to appropriate thereto no portion of the income accruing prior to his attainment of the age of twenty-five, after he was removed from their control: 2 Perry, Trusts, 612; Thompson v. Griffin, 1 Cr. & P. 321.

Under the will the grandson was not to be entitled, at any time, to any portion of the surplus income accruing prior to his attainment to the age of twenty-five.

Under the will, any income not appropriated by the executors to the maintenance and education of the grandson was to pass, upon his decease, if he should leave issue, to such issue, and if he should leave none, then to the four children of the testator.

The direction to accumulate the surplus income, until the attainment of the grandson to the age of twenty-five, was void in toto, under the act of 1853.

The surplus income which accrued prior to the attainment by the grandson to the age of twenty-five passed, because of the void direction to accumulate, to the residuary legatees: Washington's Est., 75 Pa. 106; Hibb's Est., 143 Pa. 224; Grim's Est., 109 Pa. 397.

Under the circumstances of the case interest was not recoverable: Knight v. Reese, 2 Dal. 182; Patterson v. Nichol, 6 Watts, 383; Ry. v. Phila., 51 Pa. 468; Porter v. Com., 17 Pa. 17; Phila. v. Ry., 102 Pa. 190.

*Silas Porter* and *Samuel T. Brown, John Scott, Jr.*, with them, for W. W. Buckley.—The codicil was illegal and void: Chew's Ap., 45 Pa. 228; Mickey's Ap., 46 Pa. 337; Bryant v. Thompson, 59 Hun, 545; State v. Richardson, 40 N. H. 272; O'Hara on Construction of Wills, 268; Mallett v. Smith, 60 Am. Dec. 107; McIlvaine v. Gethen, 3 Whart. 575; Flickwir's Ap., 136 Pa. 374; Beevor v. Partridge, 11 Simons, 229; Com. v. Kenney, 1 Chester Co. R. 322; Com. v. Gilkeson, 5 Clark, 33; Com. v. Demont, 7 Phila. 624; Com. v. Hart, 37 Leg. Int. 72; Com.

v. Addicks, 5 Bin. 520; Leonard's Est., 10 Pa. C. C. R. 437; Levy's Est., 153 Pa. 174; Vandevort's Est., 69 N. Y. S. C. (62 Hun, 612.)

The confirmation of the executors' accounts is no bar to this proceeding: Richards v. Rote, 68 Pa. 248; Senseman's Ap., 21 Pa. 331; Mintzer's Ap., 111 Pa. 524; Jackson v. Summerville, 13 Pa. 359; Kuhns's Est., 87 Pa. 100; Whelen's Ap., 70 Pa. 410; Brickner v. Lightner, 40 Pa. 199; Cunningham's Ap., 22 W. N. 538; Rickett's Ap., 31 W. N. 229; Bispham's Eq., 200; Schaeffer's Est., 8 Pa. 40; Brooke's Ap., 102 Pa. 150; Odd Fellows Savings Bank's Ap., 123 Pa. 356; Palmer v. Allen, 26 W. N. 514; Gaffney's Est., 146 Pa. 49; Sutter's Est., 19 Phil. 103; Deobler v. Snavely, 5 Watts, 225; Patterson v. Nichol, 6 Watts, 379; Com. v. Moltz, 10 Pa. 529; Pugh v. Powell, 11 Atl. R. 570; Kline's Ap., 86 Pa. 363; Guenther's Ap., 4 W. N. 41; Chandler's Ap., 100 Pa. 265.

A construction which will satisfy the language used, without leading to absurd or inconvenient results, is to be preferred; still more so if the opposite construction will defeat the will altogether, and divert the bounty of the testator from those whom he manifestly intended to benefit, and give it to persons whom he thought he had already sufficiently provided for: Bonaffon's Est., 14 W. N. 501; Gray on Perpetuities, § 633; McBride's Est., 152 Pa. 192.

A noncompliance with a condition by a legatee, through no fault of his, will not deprive him of his legacy: Adam's Est., 35 P. L. J. 285; Vandevort's Est., 62 Hun, 512.

The giving an estate in such manner as to involve an accumulation may transgress the statute, though there be no express direction to accumulate, since the law regards the effect and not the form of the language of the instrument: Micheson's Est., 11 W. N. 548; Jarman on Wills, 274; Phila. v. Girard's Exrs., 45 Pa. 27; Stille's Est., 1 W. N. 249.

A bequest of interest on a definite sum for life is an annuity, and interest begins at the date of testator's death: Flickwir's Est., 136 Pa. 374; Peterson's Ap., 88 Pa. 397; Sprankle v. Com., 2 Walker, 420; Evans's Est., 155 Pa. 646; Macalester's Est., 3 Dist. R. 103; McClure's Ap., 72 Pa. 414; Little's Ap., 117 Pa. 27.

An estate is vested in the legatee in Pennsylvania, where un-

der the same language in England it would be contingent and not vested. Pennsylvania judges have not followed English judges on this point: Breese's Est., 13 Pa. C. C. R. 185.

A clear disposition of property by will is not allowed to be revoked by doubtful expressions in a codicil: Leonard's Est., 10 Pa. C. C. R. 437; Vandevort's Est., 62 Hun, 612.

William Buckley was the primary object of his grandfather's bounty. The gift was for his benefit. He stood in the place of a deceased child.

The surplus interest accruing during the minority of a legatee is for his benefit, and not forfeited under the statute against accumulations: Washington's Est., 75 Pa. 102; Carson's Ap., 99 Pa. 325.

OPINION BY MR. JUSTICE WILLIAMS, Oct. 1, 1894 :

There are two principal questions involved in this case. The first relates to the conclusiveness of the proceeding in the orphans' court under which distribution was made by the executors of William R. White, deceased, in 1870. The second involves the construction of the codicil to the will of the testator. The report of the auditor shows that the testator died about the first of October, 1868, disposing by his will of an estate amounting to more than half a million of dollars. Four of his children survived him. The fifth, a daughter, was dead; but her husband, George D. Buckley, and her son, William White Buckley, the petitioner, were living.

The testator gave his estate to his four surviving children except the comparatively small sum of fifty thousand dollars which he directed his executors to set apart and place in the hands of some Philadelphia life insurance, annuity and trust company to be selected by them, for the benefit of his grandson, William White Buckley. The income from this sum was to be paid annually to his executors and by them disbursed for the education and care of his grandchild until he reached the age of twenty-five years, after which it was to be paid to him directly, during his natural life, with a limitation over to his children, or in default of children then over to the testator's four surviving children and their heirs.

By a codicil to his will he directed, " that should any attempt at law or otherwise be made during the minority of my said

grandson to withdraw his person from the charge or custody of my executors by his father or any other person, then and in such case I hereby direct my executors to suspend all further payments aforesaid, and in such case I hereby revoke all provisions for such grandson by my said will."

The testator had been involved in business difficulties with his daughter's husband George D. Buckley, had come to distrust his integrity, and to regard him with positive aversion. He desired to preserve the child from what he believed would be the unwholesome influence of his father, and this feeling suggested the codicil to the will. Mrs. Buckley, the daughter of the testator, died about one year before her father, and her husband became involved in criminal proceedings in Berks county. The testator's living children seem to have regarded their sister's infant child as under their care, and he was removed to the home of his aunt Mrs. Borie. Soon after the probate of the will her husband was appointed by the orphans' court guardian of the person of the child. He was therefore in the custody of his guardian and living as a member of his family. During the month of November, 1868, Geo. D. Buckley was at large and came to Philadelphia to look after his son. He made an effort to remove him from the custody of his guardian forcibly. Failing in this he employed an attorney and through him opened a correspondence with the attorney of the executors for the purpose of obtaining the possession of his child. Without any legal proceeding whatever, the executors and the guardian of his person appointed by the court, surrendered the child to his father who carried him into another state, and thereafter retained possession of him.

In 1870 the executors filed their account, and at the request of the four surviving children of the testator, their attorney was appointed an auditor to make distribution. The whereabouts of the petitioner and his father were known, but no notice was given to either of them of the filing of the account, of the application for the appointment of an auditor, of the proceedings before the auditor, or the filing of his report. Notwithstanding this, the auditor reported that the provision made for the petitioner in his grandfather's will had been defeated by the conduct of his father; and that he was entitled to no part of the same and no interest whatever in his grand-

father's estate. This report was confirmed, and distribution ordered among the four children who survived the testator.

Now the rule undoubtedly is that the judgment of a court of competent jurisdiction is conclusive of the point decided, between parties and privies, and therefore when the question is raised in any collateral proceeding between other persons it is to be regarded as conclusive on such persons also. But the conclusive character of a judgment or decree depends not only upon the statutory grant of jurisdiction to the court pronouncing it, but upon actual jurisdiction over the persons whose rights are the subject of investigation. Unless the court has the parties before it, by appearance or service of process, it is obvious that it cannot bind them by its adjudications. The four children of the testator appeared voluntarily with the executors of their father's will and asked the appointment of Mr. Paul as auditor. They stated to the court that they were the only parties who had any interest in the estate. After his appointment the auditor proceeded at once to what was the main purpose of his appointment, viz : to consider the situation of the grandson and to determine that the legacy to him had been forfeited by the attempt of his father to withdraw him from the custody of the testator's executors. He found the fact of such attempt, and therefrom concluded as matter of law that the grandson had no further rights under the will, and reported a schedule of distribution wholly excluding him from the fund. This was confirmed without objection, and the payments were made by the executors to the four children accordingly. This is the adjudication, and these are the payments made under it, that are set up as conclusive against the petitioner.

It will be seen from this statement or review of the facts that the real parties in interest in the controversy before the auditor were the four living children of the testator on one side, and his infant grandson, then about four years old, on the other. The subject of controversy was the legacy to the infant grandson contained in the testator's will. The auditor before whom the question was to be heard was selected by one side without notice to the other. He was the attorney of the parties selecting him, under whose advice the grandson had been surrendered to his father. He was to pronounce upon the

legal effect of a surrender which was the result of a correspondence both sides of which were conducted under his supervision, as both the demand of George D. Buckley for his son, and the reply thereto on behalf of the executors were written by him. As an auditor he held that what he had arranged as an attorney was effective to extinguish the rights of the infant, and vest the fifty thousand dollars provided by the will for him, in his clients; and he awarded it to them accordingly. Neither the auditor, nor the executors, nor the children of the testator suggested to the court that William White Buckley was an infant, and a non-resident of the state. Neither of them asked the appointment of a guardian ad litem to represent him. The fact of his existence was withheld from the court by the agreement for the appointment of an auditor, and the representation that it was signed by all the parties having any interest in the estate. To enter upon an argument to prove that such a proceeding was not conclusive upon the unrepresented infant would require an unnecessary waste of words and could add nothing to the force of a mere statement of the facts. The character of the parties forbids the idea that it was a scheme to divest this infant of his rights. It was doubtless the result of haste and thoughtlessness on the part of the children of the testator, and of a mistaken confidence in his professional opinion on the part of the attorney and auditor. But whatever the fact may be as to the manner in which the proceeding was conducted, the conclusion is inevitable that it was not such an adjudication as could conclude the infant against whom it was rendered without a hearing and without notice. As a settlement of the accounts of the executors it may be conclusive, at least it is not now questioned; but as a decree of distribution it was a nullity so far as the interest of the petitioner is concerned.

The court below was right therefore in holding that the petitioner had a right to be heard on the subject of his interest under his grandfather's will. This brings us to the second question, and requires us to consider the construction of the codicil to the will of the testator.

There is no doubt that the will as originally written gave to the petitioner a vested interest. If this interest has been divested it must be by virtue of the codicil in which the testator

directs that if " any attempt " is made to withdraw his grandson from the custody of his executor by "his father or any other person " then the provision made for him in his will shall be inoperative.  The testimony shows that at the date of the codicil the grandson was in the care of Mrs. Borie.  The father was then in confinement.  The purpose of the codicil was to secure to the child such an education and such moral training as the father could not give him, by making it largely to the interest of both father and son that he should remain under the care of. his maternal relatives.  The custody of the child was that which the testator desired to secure.  If he could not control this, but the child was to go to and be reared by his father, then the testator was unwilling to make any provision for him.  What then did he mean by the words "any attempt?"  If he meant to include unsuccessful and abandoned attempts then it might happen that the custody of the child might continue in his executors and family, and yet all provision for his education and support be forfeited.  This was not the testator's thought.  He wished to make the legacy depend on the continued custody of the child so that he might be suitably educated if he remained with his mother's relatives.  The attempt against which the testator tried to guard was not an abortive one that should leave the custody unchanged, but a successful one that should change the custody.  The idea of a surrender as the result of correspondence he evidently did not entertain.  We do not think the evidence or the report of the auditor shows any such attempt to withdraw the child from the custody of the executors as the testator intended to provide against; and we quite agree with the court below that if the auditor's construction of the codicil could be sustained the condition would be void for vagueness and uncertainty.  The codicil is an attempt to engraft upon the legacy to the grandson a condition subsequent, by means of which the estate of the legatee might be forfeited by the acts of persons over whom he had no control and for whose conduct he was in no sense responsible.  Such conditions are not regarded with favor by the courts and will not be enforced when they can be reasonably relieved against.  It is not necessary to treat the codicil as intended to operate in terrorem merely.  It is enough to say that if interpreted as the auditor held it should be, so as

to include all attempts whether successful or unsuccessful, whether abandoned or defeated, whether made by the father or a stranger, it is void for uncertainty. If on the other hand it is interpreted to mean successful attempts made with force, or at the law, the evidence shows no such attempt. It shows simply a correspondence conducted on both sides under the supervision of the attorney for the executors, and a surrender of the child as the result of such correspondence. This did not, it could not, divest the vested legacy of the infant who was the subject of the correspondence and transfer it to those who through their attorney were consenting to the surrender.

The decree appealed from is affirmed, the appellants to pay the costs of this appeal.

MR. JUSTICE MITCHELL, and MR. JUSTICE FELL dissent on the second ground, in construction of the will.

### BUCKLEY'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, Oct. 1, 1894:

This appeal is from the same decree just considered in the appeal of William R. White and J. Henry Hentz, executors. The appellant contends that the orphans' court did not go far enough in the matter of interest, and alleges that the executors should be required to account to him for the income of the legacy, given him in the will of his grandfather, from the death of the testator down to the date of the decree. The orphans' court held him entitled to the income after he reached the age of twenty-five years, but denied his right to demand it prior to that time. This seems to be exactly in conformity with the directions of the will. The testator gave the sum of fifty thousand dollars to such life insurance, annuity and trust company of Philadelphia as his executors should designate, in trust to invest the same, collect the income therefrom, and pay it over to his executors, or so much of the same "as my executors may deem sufficient to maintain and educate my grandson Wm. W. Buckley suitably to his relationship to me until he shall arrive at the age of twenty-five years." After he should reach the age named the will directed the trustee to pay the income, not to the executors but to the grandson in person during the remainder of his natural life. At the death of his

grandson the testator directed the trustee to turn over "the whole principal sum and whatever increase thereto there may be" to the lawful issue of the grandson; and in default of lawful issue then over to the testator's children living at the time of his own death and to their heirs. Until the grandson reached the required age his interest in the income from the legacy was made to depend on the discretion of the executors. The trust was in effect a spendthrift trust in which the beneficiary, whose judgment is distrusted, is left to the care of those in whom the testator confides. The testator in this case placed his executors in his own stead and left to them the direction of the education and care of his grandson, which had he lived he would have controlled in accordance with his own views.

The appellant has no right therefore under the terms of the will to call the executors to an account for the exercise of their discretion. What he was authorized to receive and demand from the trustee he may ask the executors to account for because of their failure to appoint the trustee, but the learned orphans' court was right in holding that he had no legal claim upon the income which was not payable to him, and which the executors were empowered to use in their discretion for his maintenance and education. What rights the remaindermen may have if any, under the terms of the will, to require an account of the "increase" which the testator anticipated as probable, it is now not possible to determine. They are not, and cannot become, parties to this proceeding.

The appeal is dismissed at the cost of the appellant.