Board of Christian Education of The Presbyterian Church, Appellant, *v.* Philadelphia School District.

Argued March 27, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Edward B. Hodge,* with him *Norris, Lex, Hart & Eldredge,* for appellant.

*C. Brewster Rhoads,* with him *Edward B. Soken, Sidney L. Wickenhaver,* and *Montgomery, McCracken, Walker & Rhoads,* for appellees.

OPINION BY RENO, J., October 1, 1952:

Appellant, Board of Christian Education of The Presbyterian Church In The United States of America, a New York nonprofit corporation organized for religious purposes, duly registered in Pennsylvania, sought an injunction against the School District of the City of Philadelphia and its Receiver of Taxes to restrain the collection of taxes imposed by the Act of May 23, 1949, P. L. 1669, 24 P.S. §584.1, et seq.[1] The School District's preliminary objections were sustained and the bill dismissed. This appeal followed.

The Act, §3, provides: *"Every person engaging in any business* in any school district of the first class shall pay an annual tax at the rate of one (1) mill on each dollar of the *annual receipts thereof."* "Business" is defined by §1(2) as "carrying on or exercising for gain or profit within a school district of the first class, *any* trade, *business,* including financial business as hereinafter defined, profession, vocation, or *commercial activity,* or making sales to persons within such school district of the first class." The same section, so far as pertinent here, excludes from the op-

---

[1] This statute was amended and re-enacted in 1951, making the "temporary tax" a permanent tax. Act of May 10, 1951, P. L. 265.

eration of the Act: "Any business conducted by a non-profit corporation or association organized for religious, charitable, or educational purposes, . . ."[2] (Emphasis added.)

The facts are not disputed and are stated in the bill and a stipulation. The Board owns and operates an office building, consisting of a basement and eleven floors, at Walnut and Juniper Streets, in the business center of Philadelphia. It contains approximately 127,315 square feet of floor space, of which 16,660 square feet are occupied as an auditorium; 88,600 square feet by the Board and other Church agencies; and 38,700 square feet by commercial tenants. During the year ended December 31, 1950, the Board collected $100,106.03 from 44 commercial tenants and from non-church users of the auditorium. The School District claims $100.11 tax upon the receipts from the commercial tenants.

---

[2] The entire provision excluding certain "business" from the tax follows: " 'Business' shall not include the following: *Any business conducted by a non-profit corporation or association organized for religious, charitable, or educational purposes,* the business of any political subdivision, or of any authority created and organized under and pursuant to any act of Assembly, the specific business conducted by any public utility operating under the laws, rules and regulations administered by the Pennsylvania Public Utility Commission of furnishing or supplying service or services at the fixed rates specified in its tariffs, the business of any insurance company, association or exchange, or any fraternal, benefit, or beneficial society of any other state under the laws of which insurance companies, associations or exchanges, or fraternal, benefit, or beneficial societies of this Commonwealth doing business in such other state are subjected, by reason of the tax imposed by this act, to additional or further taxes, fines, penalties or license fees by such other state, and any employment for a wage or salary." (Emphasis added.)

This decision deals only with the clause relied upon by the Board. The validity of the other exclusions are not questioned here and this opinion does not apply to them.

The Board contends that the provision excluding "Any business conducted by a non-profit corporation . . . organized for religious, charitable, or educational purposes" is a permissible and constitutional *classification* of the subjects of taxation, and is thereby relieved from payment of the tax. On the other hand, the School District, denying that the provision is a proper classification, contends that it is an abortive attempt to *exempt* the Board from taxation in violation of the Constitution, Art. IX, §§1, 2.

I. The courts have recognized a distinction between a tax immunity produced by a classification and one created by an exemption. *Com. v. Germania Brewing Co.*, 145 Pa. 83, 22 A. 240. "[C]lassification does not always lead to an exemption": *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 432, 184 A. 37. But where the immunity, granted either by an exemption or a classification, depends upon the construction of the terms of a statute the claimant must bring himself clearly and squarely within the exclusionary provision. "Language which relieves from taxation is to be strictly construed": *Com. v. Lackawanna I. & C. Co.*, 129 Pa. 346, 356, 18 A. 1120. *McGuire v. Pittsburgh School Dist.*, 359 Pa. 602, 60 A. 2d 44, and the cases therein cited. Statutory Construction Act of May 28, 1937, P. L. 1019, §58(5), 46 P.S. §558.

II. The Constitution, Art. IX, §1, authorizes the General Assembly to "exempt from taxation . . . actual places of religious worship, . . . [and] institutions of purely public charity." Section 2 provides: "All laws exempting property from taxation, other than the property above enumerated shall be void."[3] The two

---

[3] The entire section of the Constitution follows: "Section 1. All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly

sections, read together, impose limitations upon the power of the legislature to exempt property from taxation. It is beyond legislative competence to exempt more than the property used as a place of public worship or for purely charitable activities. Moreover, an exemption exists, not by virtue of the provisions of the Constitution, but only by the force of a valid statute enacted under it.

The Board's building is not a place of worship but it has been conceded to be a purely public charity. As such, only that property which is used for its charitable enterprises is exempt from taxation. The receipts for rent from its commercial tenants are not exempt and cannot be exempted from taxation, even though that revenue is devoted to the purposes for which the charity was founded. *Y. M. C. A. of Germantown v. Philadelphia,* 323 Pa. 401, 187 A. 204; *Board of Home Missions, etc., v. Philadelphia,* 266 Pa. 405, 109 A. 664; *American Sunday School Union v. Philadelphia,* 161 Pa. 307, 29 A. 26. It follows that the expression "Any business", if intended by the legislature to exempt the Board's rental receipts from taxation, is void under the express limitation provided by Art. IX, §2, of the Constitution.

"[N]o matter what was the legislative language, the exemption could not extend to any property not a 'purely public charity' ": *White v. Smith,* 189 Pa. 222, 227, 42 A. 125. Nor can the nature of the tax

___

may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines."

Section 2. "All laws exempting property from taxation, other than the property above enumerated shall be void."

enlarge the legislature's power or diminish the limitations under which it acts. Whether the tax in question be regarded as a tax upon property or an excise upon the privilege of doing business, the result is the same; the General Assembly can exempt only the property which is used as a purely public charity. See *American Stores Co. v. Boardman,* 336 Pa. 36, 42, 6 A. 2d 826. Engagement in a business enterprise or commercial activities is not a primary function of a public charity, and any provision which relieves it from the payment of taxes imposed upon such enterprise or activities is an invalid exemption.

*Y. M. C. A. of Philadelphia v. Philadelphia,* 139 Pa. Superior Ct. 332, 11 A. 2d 529, upon which appellant heavily relies, holds nought to the contrary. Involved was a sales tax ordained by the Philadelphia taxing authorities, from which sales by or to "charitable and religious institutions which are supported wholly or in part by public subscriptions or endowment and are not organized or operated for profit" were exempted. This Court held (p. 338) the sales of food and beverages in the institution's dining rooms, lunch rooms and cafeterias were not taxable under the terms of the ordinance, since "the ordinance, in its exempting clause, evidently had in mind the *incidental* furnishing of restaurant, etc., service by a charitable institution, in connection with its main charitable work." Obviously, the case does not control the instant situation. While operating its dining rooms the Y. M. C. A. was directly performing the charitable purposes for which it was organized, and the persons who bought meals from it were receiving the benefits which the institution was formed to provide. But the business which the Board operates, renting office space to commercial tenants, is not within the purposes for which it was organized, and its tenants are not the

objects of its charity. The operation of an office building is not a "purely public charity", and its owner is not entitled to an exemption as an incidental service in connection with its main work.

III. Considered as an immunity conferred by legislative classification of the subjects of taxation, the provision in question offends that portion of Art. IX, §1 of the Constitution which provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; . . ."

The power of the legislature to classify subjects of taxation has been long recognized, and some of the many approved classifications are listed in *Turco Paint & Varnish Co. v. Kalodner,* supra, p. 433. But the power to classify is not unlimited. It cannot be made arbitrarily. Arbitrary selection is not valid classification. There must be a real distinction between the objects with which the law deals. It must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is made. "The test of classification is whether it produces diversity in results or lack of uniformity in its operation either on the given subject of tax or the persons affected as payers": *Schoyer v. Comet Oil & Refining Co.,* 284 Pa. 189, 197, 130 A. 413, and the cases there relied upon. In the recent case, *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 167, 87 A. 2d 480, Mr. Justice Bell furnished an admirably succinct version of the rule: "This [Constitution, Art. IX, §1, supra] means that the classification by the legislative body must be reasonable and the tax must be applied with uniformity upon *similar kinds of business or property* and with substantial equality of the tax burden to all members of the same class". (Emphasis added.) Earlier, Mr. Justice Maxey had said: "A tax to be uni-

form must operate alike on the classes of things or property subject to it": *Com. v. A. Overholt & Co., Inc.,* 331 Pa. 182, 191, 200 A. 849.

The instant tax is laid upon *receipts from business,* including *receipts* from any *commercial activity.* The *receipts* are the subjects or objects of the tax, the "things or property subject to it". Persons, individual or corporate, are the taxpayers, not the objects or subjects of the tax. To the extent that the Board leases office space to commercial tenants it is engaged in business, as all our cases hold, and the rent is a receipt from a business. Such business, as has been demonstrated, cannot be constitutionally *exempted* from taxation. Maybe the legislature by classification can immunize from taxation a business which it cannot validly exempt. But, having imposed a tax upon *all* receipts from *all* commercial activities, it cannot validly classify the recipients, the taxpayers, so that some pay and others do not. There is no distinction, real or substantial, between the moneys, the receipts, the rents received by commercial owners of office buildings and those received by charities operating similar properties. The fact that the receipts are devoted to a charitable purpose cannot justify a discrimination in favor of the owner, not any more than if a commercial owner contributed his rents to a charity; for, as Mr. Justice DEAN said in *American Sunday School Union v. Philadelphia,* supra, p. 314: "Every dollar the society expends is some charitable contributor's gains or profits from some business not charitable; if such contributor devoted the whole of his profits from the sale of dry goods, groceries or books to promote this particular charity, that fact would not make the source of such profit a purely public charity."

The cogent reasons precluding exemption from taxation of the business operations of a charitable institu-

tion, which Mr. Justice DEAN and others have vigorously expressed, apply with equal force to an attempted classification which excludes such operations from a general levy on similar businesses. The Board's building is located in the business center of the city, in competition with the owners of similar buildings, and as a landlord it is engaged in business as fully and as truly as its competitors. Like its competitors, the Board derives inestimable benefits from the maintenance of an efficient public school system. It could be readily demonstrated that the value of its buildings and the successful operation of its charitable activities require a sustaining, a favorable cultural and educational climate, and from its purely commercial activities it should contribute a fair proportion of its receipts for the support of the common schools. That a Board of *Education,* engaged in a business enterprise, should be excused from contributing a minute fraction of its purely commercial income for the support of the city's foremost *educational* project is an intriguing anomaly.

It is probably true, as the Board asserts, that nonprofit corporations as a class, have been excluded as subjects of taxation from other statutes which imposed taxes upon corporations. However that may be, here nonprofit corporations as such are not excluded as a class; only those "organized for religious, charitable, or educational purposes" are immunized. Thus nonprofit corporations, which the law has long and consistently recognized as one class, a separate and distinct class, by the Nonprofit Corporation Law, and earlier statutes, are by this Act broken down into two classes. The result is that nonprofit corporations, not organized for religious, charitable, or educational purposes, but "organized for a purpose or purposes not involving pecuniary profit, incidental or otherwise, to

its members"[4] are subject to the instant tax if they engage in business. There are probably scores of nonprofit corporations in Philadelphia which own buildings and rent parts of them to commercial tenants. Not one cent of the rent accrues to the members of such corporations as a pecuniary profit. The receipts are used to further their corporate purposes which, although not religious, charitable, or educational, in a strict sense, are nevertheless laudable and in the public interest, such as benevolent, beneficial, fraternal, patriotic and similar associations which make generous and important contributions to the public welfare. Thus the Act produces an inequality of burden upon different members of the same class of nonprofit corporations, condemned in *Allentown School District Mercantile Tax Case,* supra, which we again quote, p. 170:

"Uniformity requires substantial equality of tax burden: Com. v. Overholt & Co., Inc., 331 Pa. 182, 200 A. 849; Com. v. Repplier Coal Co., 348 Pa. 372, 35 A. 2d 319; Moore v. Pittsburgh School District, 338 Pa. 466, 13 A. 2d 29. While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained (Wilson v. Philadelphia, 330 Pa. 350, 352, 198 A. 893), the imposition of taxes which are to a *substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification, is prohibited*: Cf. Com. v. Overholt & Co., Inc., 331 Pa. 182, 190-191, 200 A. 849; Pollock v. Farmers' Loan and Trust Co., 157 U. S. 429, 599." (Emphasis added.) Given the construction for which the Board contends, the Act would enact an unjust and

[4] Nonprofit Corporation Law of May 5, 1933, P. L. 289, §2, 15 P.S. §2851-2.

unreasonable discrimination against a sub-class of the larger class of nonprofit corporations.

The Board's argument rests fundamentally upon a statement by Judge THAYER in *General Assembly v. Gratz*, 139 Pa. 497, 505, 20 A. 1041, where he suggested that the legislative usage and practice "of abstaining from taxing the personal property of charitable and religious associations" has become "the public policy of the state." The expression was sanctioned by the Supreme Court in an affirming per curiam opinion and later approved in *Union Trust Co. of Pittsburgh's Account*, 326 Pa. 251, 252, 191 A. 658. Properly related to the source of public policy and the context in which it appears, the statement is acceptable. The public policy of this Commonwealth is found in the Constitution and the statutes enacted under it, as judicially interpreted.[5] In Pennsylvania the Constitution authorizes exemption of purely charitable institutions, and statutes have enacted the exemption. The courts have, without exception, held that statutory exemptions do not extend to the business activities of such institutions. This, then, is the public policy of the State: Pennsylvania does not exclude from taxation the commercial activities of charitable institutions, and it has not abstained from taxing them. *To the contrary it has taxed them in the same way and to the same extent that it has taxed similar business activities.* Moreover, the cases where Judge THAYER'S dictum was applied involved securities held in trust for the benefit of a charity, and it was not shown or alleged that the proceeds of the securities were employed in the operation or promotion of noncharitable purposes or for en-

---

[5] "Generally speaking, the legislature is the body to declare the public policy of a state . . .": *Com. v. Hall*, 291 Pa. 341, 353, 140 A. 626. See also *Mamlin v. Genoe*, 340 Pa. 320, 324, 17 A. 2d 407.

gagement in any type of business or commercial activities.

IV. Finally, we are in substantial accord with the conclusion reached by learned President Judge OLIVER: "At first blush, the wording of the exception seems clear and unambiguous: '. . . any business . . .' operated by a charity is exempt from taxation. The word 'any' seems all-inclusive and susceptible to no other definition. But it is also clear, after a close examination of our cases, that the legislature, in framing this exception, had no intention of exempting business of every kind merely because it is operated by a charity. The great preponderance of cases interpreting the provisions of Article IX of the Constitution, and the cases cited *supra* which discuss the liability of charitable organizations for taxes on businesses operated for profit, leave no doubt that the legislature meant to exempt only incidental businesses from taxation. By 'incidental' business we mean only those activities which are so closely connected with the operation of the charity, and the fulfillment of the objects and purposes of the charity, that without such business operation the institution could not continue to properly fulfill the objects and purposes of its organization."

"Any" is a broad and comprehensive term and generally means "all" or "every", but not always. 3 Words and Phrases, 529, et seq. Its significance is discoverable in its context[6] and often by considering other relevant legislation. The United States Supreme Court said that the meaning of a word "depends upon its legislative environment", and concluded that "any per-

---

[6] Words do not always mean the same thing. "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U. S. 418, 38 S. Ct. 158, 159.

son" in anti-trust legislation included the State of Georgia. *Georgia v. Evans,* 316 U. S. 159, 62 S. Ct. 972. Our own Supreme Court said that in acts of the General Assembly "generality of expression is often to be restricted by regard to the subject-matter in respect to which it has been used", and found that "any borough" is limited to boroughs incorporated after the passage of the Act of April 3, 1851. *Com. ex rel. v. Council of Montrose Borough,* 52 Pa. 391, 392. In *Com. v. Heller,* 219 Pa. 65, 70, 67 A. 925, Chief Justice MITCHELL discussed the phrase, "any city" and said that it "primarily refers to cities individually. It may include all, but does not necessarily do so." To the contrary, after a study of the legislative background, Chief Justice MOSCHZISKER found that an Act authorizing a city to make a new assessment in "any ward or wards" empowered it to make a new assessment for the whole city. *Glen Alden Coal Co. v. Scranton,* 282 Pa. 45, 127 A. 307. The instances in which the meaning of words has been found in their "legislative environment" or in the context in which they appear could be easily enlarged.[7]

There is a well-founded presumption that the General Assembly knows the prior legislation on the same subject and the judicial decisions construing the pre-existing law. 59 C. J., Statutes, §600. "As an aid in the construction of a statute, it is to be assumed or

---

[7] For varying interpretations of "any" in differing contexts, see the following illustrative cases, selected at random from a larger group: *Philadelphia v. Ridge Ave. Ry. Co.,* 102 Pa. 190, ("any dividend") ; *Beaver Falls B. & L. Assn. v. Allemania Fire Ins. Co.,* 305 Pa. 290, 157 A. 616, ("any act") ; *Cooper v. Metropolitan Life Ins. Co.,* 317 Pa. 405, 177 A. 43, ("any and every kind of duty") ; *Brown's Estate,* 208 Pa. 161, 57 A. 360, ("any and all necessary expenses") ; *White's Estate,* 163 Pa. 388, 30 A. 192, ("any attempt") ; *Flynn's Case,* 303 Pa. 198, 154 A. 368, ("any constable").

presumed that the legislature was acquainted with, and had in mind, the judicial construction of former statutes on the subject, and that the statute was enacted in the light of the judicial construction that the prior enactment had received, or in the light of such existing judicial decisions as have a direct bearing upon it. Such earlier decisions will accordingly be taken into consideration": 50 Am. Jur., Statutes, §321. Our General Assembly has itself declared that its intention "may be ascertained by considering, among other matters . . . (5) the former law, if any, including *other laws upon the same or similar subjects*": (Emphasis added.) Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551.

In view of the long line of decisions which hold that the outside business or commercial activities of a charity are not exempt from taxation, the conclusion is irresistible that in using the phrase "any business" the legislature intended to exclude from the operation of the Act only that kind of business which has been heretofore held to be constitutionally free from taxation under the several exemption statutes.

Order affirmed at appellant's costs.