DISSENTING OPINION BY
JUDGE WOJCIK
I respectfully dissent from the majority’s thoughtful opinion because I would affirm the Pennsylvania Public Utility Commission’s (PUC) interpretation of the definition of “stripper well” in Section 2301 of the statute commonly referred to as Act 13, 58 Pa.C.S. § 2301. To be considered a type of unconventional gas well, or a “vertical gas well,” upon which Act 13 impact fees may be levied, the well must produce natural gas in quantities greater than that of a “stripper well.” Id. In turn, Act 13 defines “stripper well” as:
An unconventional gas well incapable of producing more than 90,000 cubic feet of gas per day during any calendar, month, including production from all zones and multilateral well bores at a single well, without regard to whether the production is separately metered.
Id. (emphasis added).
As explained by the majority, the central dispute in this case concerns the meaning of the word “any” within the foregoing definition. The PUC determined that if a well produces more than the specified production level in any one month, it is capable of reaching this level and should not be deemed to be a “stripper well” under Act 13. Instead, such a well is considered to be a “vertical gas well” subject to the Act 13 impact fees. In contrast, Snyder Brothers, Inc. and intervenor Pennsylvania Independent Oil & Gas Association (collectively, Petitioners) contend that the term “any” in the definition means “all,” “each,” or “every” so that a well is only subject to the Act 13 impact fees if its production level exceeds the specified statutory minimum in every month.
I agree with the PUC’s rationale and result in this case and in prior decisions[1] based on statutory construction principles. The Superior Court has explained that “‘[ajny’ is a broad and comprehensive term and generally means ‘all’ or ‘every,’ but not always. Its significance is discoverable in its context and often by considering other relevant legislation.” Board of Christian Education v. School District of the City of Philadelphia, 171 Pa.Super. 610, 91 A.2d 372, 378 (1952).
As noted by the PUC, adopting Petitioners’ construction would impede the imposition of Act 13 impact fees, which are collected to provide relief to municipalities affected by unconventional gas drilling, a primary purpose of the statute.[2] *1032 The PUC correctly explained that Petitioners’ construction contravenes the General Assembly’s intent that is manifested in the legislative history of Act 13’s enactment because the word “a” was removed and replaced by the word “any” in a different provision of the statute dealing with stripper wells. See Section 1921(c)(4), (7) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c)(4), (7) (“[T]he intention of the General Assembly may be ascertained by considering ... [t]he object to be attained [and t]he contemporaneous legislative history.”).
I agree that adopting this construction would encourage drillers to artificially suppress production levels to pierce the statutory floor in one month thereby avoiding the payment of impact fees for an entire calendar year regardless of. production in the other months of that year. See Section 1921(c)(8) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c)(8) (“[T]he intention of the General Assembly may be ascertained by considering ... [t]he consequences of a particular interpretation.”); Section 1922(1), (5), 1 Pa.C.S. §§ 1922(1), (5) (“In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: ... That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable^ and] That the General Assembly intends to favor the public interest against any private interest.”).
The PUC also properly relied on Dechert LLP v. Commonwealth, 606 Pa. 334, 998 A.2d 575, 584-86 (2010), to avoid construction in Petitioners’ favor[3] because its statutory construction analysis definitively reveals the General Assembly’s intent. “Moreover, when construing statutory language, it is this Court’s practice to afford substantial deference to the interpretation rendered by the agency charged with its administration.” Id. at 586 (citation omitted). See also Section 1921(c)(8) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c)(8) (“[T]he intention of the General Assembly may be ascertained by considering ... administrative interpretations of such statute.”).[4] Finally, I discern no error *1033 in the PUC’s decision to refrain from imposing a discretionary civil penalty, or imposing mandatory interest and penalties under Section 2308(a) and (b).[5]
Accordingly, unlike the majority, I would affirm the PUC’s order.
Judge Cosgrove joins in this dissent.

. See Act 13 of 2012-Implementation of. Unconventional Gas Well Impact Fee Act, Reconsideration Order Regarding Chapter 23, Docket No. M-2012-2288561, entered July 19, 2012; Act 13 of 2012-Implementation of Unconventional Gas Well Impact Fee Act, Proposed Rulemaking Order, Docket No. L-2013-2375551, entered October 17, 2013.

. Citing Section 2314 of Act 13, 58 Pa.C.S. § 2314, the majority mischaracterizes the affected municipalities as merely "incidental beneficiaries” of the impact fees paid under *1032 Act 13. Majority op. at 1027-28. To the contrary, as explained by the PUC, "[Act 13] provides for the imposition of an unconventional gas well fee (also called an impact fee), and the distribution of those funds to local and state governments. ... A significant portion of the funds collected will be distributed directly to local governments to cover the local impacts of drilling.” http://www.puc.pa. gov/filing_resources/issues_laws_regulations/ acL.13_impact_fee_.aspx (last visited March 24, 2017). Indeed, as provided in Section 2314(d), following disbursements to conservation districts and state agencies, a full "60% of the revenue remaining in the fund from fees collected for the prior year aré hereby appropriated to counties and municipalities for purposes authorized under subsection (g).” 58 Pa.C.S. § 2314(d), Moreover, the amount of impact fees paid to municipalities is so significant that the General Assembly has set a ceiling regarding the amount that a municipality may receive. 58 Pa.C.S. § 2314(e). By expressly providing for the collection and distribution of such impact fees to municipalities within the body of Act 13, the General Assembly manifestly stated as paramount its intent to mitigate the negative effects of such unconventional drilling.

. See Section 1928(b)(3) of the Statutory Construction Act, 1 Pa.C.S. § 1928(b)(3) (“All provisions of a statute of the classes hereinafter enumerated shall be strictly construed: ... (3) Provisions imposing taxes.”). But cf. Board of Christian Education, 91 A.2d at 378 ("[A]fter a study of the legislative background, Chief Justice Moschzisker found that an Act authorizing a city to malee a new assessment in ‘any ward or wards' empowered it to make a new assessment for the whole city. Glen Alden Coal Co. v. City of Scranton, [282 Pa. 45] [127 A. 307, 308 (1925)].”).

. The majority malees much of the fact that the PUC has interpreted the ,word "any” to have a different meaning with respect to the *1033 provisions relating to vertical wells. Majority op. at 1028-29. However, it is well settled that "precisely the same words, or combination of words, may have different meanings when used under varying circumstances,” and that " ‘[wjhen used under different circumstances and with different context, the same words may express different intentions.’ ” Commonwealth ex rel. Woodruff v. Benn, 284 Pa. 421, 131 A. 253, 258 (1925) (citations omitted). See also Public School Employees' Retirement System v. Pennsylvania School Boards Association, Inc., 545 Pa. 597, 682 A.2d 291, 295 (1996) (Cappy, J. dissenting) ("That the term 'full school year’ can mean different things in different statutory contexts (and even within the same statutory context) and for different purposes proves to me that the Board’s regulation which defines ‘full school year’ for purposes of crediting retirement benefits, where the [Public School Employees'] Retirement Code[, 24 Pa.C.S. §§ 8101-8534,] is admittedly silent as to the definition, is not unreasonable, and therefore, should not be stricken.”). This is particularly true where the word " *[a]ny’ is a broad and comprehensive term,” and “[i]ts significance is discoverable in its context and often by considering other relevant legislation.” Board of Christian Education, 91 A.2d at 378. Thus, the PUC’s differing interpretation of the same "broad and comprehensive term” does not relieve this Court of our duty to defer to the PUC’s interpretation of Act 13. See, e.g., Tool Sales & Service v. Board of Finance and Revenue, 536 Pa. 10, 637 A.2d 607, 613 (1993) ("It is a well-established principle of administrative law that agencies are entitled deference in interpreting the statutes they enforce. Other courts in this Commonwealth have held that an administrative agency’s interpretation should be overturned or disregarded only for cogent reasons or where it is 'clearly erroneous,’ Where the statutory scheme is [] technically complex [], ‘a reviewing court must be even more chary to ^substitute discretion for the expertise of the administrative agency.' ”) (citations omitted).

. 58 Pa.C.S. §§ 2308(a) and (b). Section 2308(a) and (b) state:
(a) Assessment. — The commission shall assess interest on any delinquent fee at the rate determined under section 2307(a) (relating to commission).
(b) Penalty. — In addition to the assessed interest under subsection (a), if a producer fails to make timely payment of the fee, there shall be added to the amount of the fee due a penalty of 5% of the amount of the fee if failure to file a timely payment is for not more than one month, with an additional 5% penalty for each additional month, or fraction of a month, during which the failure continues, not to exceed 25% in the aggregate.