GENERAL ASSEMBLY v. SIMON GRATZ ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY, SITTING IN EQUITY.

139  497
160  127
139     497
  28 SC  643
139     497
e213    ¹589

Argued January 12, 1891—Decided January 19, 1891.
[To be reported.]

1. The act of June 1, 1889, P. L. 420, imposes a tax upon personal property of enumerated classes held by any one, " as active trustee . . . . . for the use, benefit or advantage of any other person." By " person," therein, is meant a particular individual, having a beneficial ownership in the property, who could claim its use, benefit or advantage, and enforce the trust in his favor.

2. Wherefore, funds held in trust, not for any particular persons, but for charitable and religious objects in which no particular individual or person has any legal or equitable rights, the beneficiaries being selected from year to year, at the discretion of the trustees, out of indefinite classes of persons, are not taxable under said act.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 356 January Term 1890, Sup. Ct.; court below, No. 132 December Term 1889, C. P. No. 4, in Equity.

To the number and term stated in the court below, " the trustees of the General Assembly of the Presbyterian Church in the United States of America," filed a bill in equity against Simon Gratz and others, constituting the board of revision of taxes of the city of Philadelphia, and Joseph B. Barry and Thomas W. Marchment, assessors of taxes for the eighth ward of said city, averring in substance as follows:

The plaintiff is a corporation, created by the act of March 28, 1799, Law Book VI, 382, 5 Carey & B. L. 408. That act recited, in a preamble:

" Whereas, the ministers and elders forming the General Assembly of the Presbyterian Church in the United States of America, consisting of citizens of the state of Pennsylvania and of others of the United States of America aforesaid, have by their petition represented that by donations, bequests, or otherwise, of charitably-disposed persons, they are possessed of money for benevolent and pious purposes, and the said ministers and elders have reason to expect further contributions for similar uses, but, from the scattered situation of the said ministers and elders, and other causes, the said ministers and elders find it extremely difficult to manage the said funds, in the way best calculated to answer the intention of the donors."

The act then created the corporation plaintiff, giving it power, inter alia, to take and hold real and personal property, previously donated to said General Assembly and held by it or for its use, or thereafter to be donated to said corporation, and the same to hold and dispose of according to the intent of the donors, providing certain regulations for the government of the corporation. By § 10 of said act, as amended by act of March 23, 1864, P. L. (1865) 648, the yearly value of the property authorized to be held by the corporation was limited to $50,000, exclusive of the annual collections and voluntary contributions of churches under the care of said General Assembly. By decree of the Court of Common Pleas No. 4 of Philadelphia county, at No. 422 September Term 1885, certain amendments were made in the regulations for the internal management of the corporation, and another corporation called " The Trustees of the Presbyterian House," created by act of April 21, 1855, P. L. 575, was merged into the plaintiff.

The assessors of taxes, named as defendants in the bill, served on the plaintiff a printed blank, prepared by the auditor general of Pennsylvania, under the act of June 1, 1889, P. L. 420, for a return of personal property for taxation, and demanded that the plaintiff make a return of all personal property, moneys, securities, etc., held by it. The plaintiff does not own, and never has owned any moneys and securities, held for its own use, benefit and advantage, but all moneys and securities held by it are trust moneys, given to it to hold as trustee for various purely public charitable purposes connected with the Presbyterian church; and these have never heretofore been taxed,

or attempted to be taxed, under the laws of this commonwealth. The plaintiff made a return to said assessors, adding thereto a statement of the trusts for which said securities and moneys were held, and its averment that none of the same were made taxable by the laws of this commonwealth.　The said assessors and board of revision have undertaken or are about to assess the trust funds, so held by the plaintiff, for taxation under said act of 1889.

The moneys and securities held in the corporate name of the plaintiff, are all held by it solely as a trustee for the specific uses stated below; and none of the same are held for the use, benefit or advantage of any persons, but all are held for purely charitable uses of a public nature, or for unknown and indefinite classes of persons who vary every year, whose wants are varying from time to time, and who are the subjects of eleemosynary care.　All said moneys have been given since 1799, at various times and in various sums, by many charitably-disposed persons, by gift or will.　The trusts upon which they are held, are as follows:

(*a*) $263,844.88, held for the relief of disabled ministers and the widows and orphans of deceased ministers of the Presbyterian church in the United States of America.

(*b*) $34,672.70, held for the work of spreading the gospel of Jesus Christ in the destitute parts of the United States.

(*c*) $13,829.75, held for the work of spreading the gospel of Jesus Christ among the destitute parts of foreign countries.

(*d*) $102,316.23, held for the support of professorships and scholarships in the theological seminary of the Presbyterian church at Princeton, New Jersey.

(*e*) $200, held for the conversion of the Jews to Christianity.

(*f*) $400, held for the conversion of the Indians of North America to Christianity.

(*g*) $32,212.12, held for the work of the Presbyterian Board of Publication and Sabbath-School work of said church.

(*h*) $7,055.93, held for the support in part of a preacher of the gospel to mariners in the port of Philadelphia.

(*i*) $9,892.02, held for assisting poor Presbyterian churches in the United States, to secure libraries of religious books for the use of the pastors for the time being of their churches.

(*j*) $9,000, held for assisting in the support in part of the

gospel in certain Presbyterian churches in the city of Philadelphia.

(*k*) $5,020.27, held for mission work in hospitals, alms houses, etc., in Philadelphia and New York.

(*l*) A fund of $4,903.75 which was given to the plaintiff for the general charitable uses of the said church. It is invested and the net income is devoted to paying the necessary expenses of taking charge of all these trust finds, the residue of said expenses being deducted pro rata from the income of each of the said trusts.

The income from all of the foregoing trusts is applied in accordance therewith.

—The bill praying for an injunction and for general relief, the defendants demurred, assigning as causes of demurrer:

1. That the mortgages, etc., held in trust, as in said bill set forth, are made taxable for state purposes by the act of June 1, 1889.

2. That there is no act of assembly or authority of law exempting from taxation the mortgages, etc., so held.

3. That the said bill doth not contain any matter of equity wherein the court can ground any decree, or give to the plaintiffs any relief against these defendants, or any of them.

After argument upon the demurrer, the court, THAYER, P. J., on March 4, 1890, filed the following opinion:

The question raised by the demurrer, in this case, is whether the moneys and securities which it is admitted by the demurrer are held by the plaintiffs as trustees for purely public charitable purposes are taxable under the act of June 1, 1889, for state purposes. The act in question imposes a tax for state purposes of three mills on the dollar on all personal property of the classes therein particularly specified and enumerated, which are " owned, held or possessed by any person, persons, copartnership or unincorporated association or company resident, located or liable to taxation within this commonwealth, or by any joint-stock company or association, limited partnership, bank or corporation whatsoever, formed, erected or incorporated by, under or in pursuance of any law of this commonwealth, or of the United States, or of any other state or government, and liable to taxation within this com-

Opinion of Court below.

monwealth, whether such personal property be owned, held or possessed by such person or persons, copartnership, unincorporated association, company, joint-stock company or association, limited partnership, bank or corporation, in his, her, their or its own right, or as active trustee, agent, attorney-in-fact, or in any other capacity, for the use, benefit or advantage of any other person, persons, copartnership, unincorporated association, company, joint-stock company or association, limited partnership, bank or corporation."

It is clear, that all property within the state, whether real or personal, belonging to the resident therein, is prima facie liable to taxation for the support of the government. By the constitution, § 1, article IX., the general assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity. The power thus given to the legislature by the constitution, to enact general laws exempting from taxation property of the kinds enumerated in the ninth article, was partially exercised by the legislature by the passage of the act of May 14, 1874, P. L. 158, which exempts the specific kinds of property therein mentioned from taxation for county, city, borough, bounty, road, school and poor purposes. I say partially exercised, for it is obvious that the act of 1874 contains no exemption from taxation for state purposes. The act of 1874 contained a proviso that all property real or personal, other than that in actual use and occupation for the purposes mentioned in the act and from which any income or revenue is derived, shall be subject to taxation for state purposes, except where exempted by law. This proviso was held to be unconstitutional in Sewickley Bor. v. Sholes, 118 Pa. 165, because the title was not sufficiently comprehensive, and disclosed merely a purpose to exempt from taxation, and no purpose to impose new kinds of taxation. But, notwithstanding the fact that we must now regard the proviso in the act of 1874 as unconstitutional, it is lawful, perhaps, to look at it, and to read it to see if it sheds any light upon the intention of the legislature in using the language contained in the residue of the act.

The defendants have built upon the language of the pro-

Opinion of Court below.

viso an argument to show that the act extends to real estate only, and that it exempts property from taxation for local purposes only. The latter proposition is probably correct, but it hardly needs the support of the proviso to maintain it, because the act by express words confines the exemption to "county, city, borough, bounty, road, school and poor taxes." With regard to the bearing of the proviso upon the other proposition, viz., that it shows that the legislature intended by the act to exempt only real estate, its effect in that direction is by no means so clear, for the proviso declares that all personal property, as well as real estate, which is not in actual use "for the purposes aforesaid" and from which income is derived, shall be subject to taxation for state purposes. Now, among the "purposes aforesaid" are enumerated "institutions of learning, benevolence and charity." The implication, therefore, would seem to be a very strong one—perhaps strong enough to be called a necessary one—that the proviso, in subjecting all property, real and personal, to taxation for state purposes, except that in actual use for the purposes aforesaid, which purposes include "institutions of learning, benevolence and charity," intended to exempt from state taxation at any rate personal property held by such institutions. While, therefore, the act of 1874 cannot be said to impose any tax, inasmuch as the proviso is held to be unconstitutional, the language of the proviso would nevertheless seem to afford ground for an argument that in undertaking in the void proviso to declare what property should be liable to taxation for state purposes, the intention of the legislature was to exempt personal property as well as real estate in use by "institutions of learning, benevolence and charity." Nevertheless the exemption act of 1874 does not appear to be capable, as such, of being used by the plaintiffs as a shield against taxation under the act of June 1, 1889, if their case is within the meaning of the act of 1889, for the reason that the act of 1874 does not itself exempt any property whatever from taxation for state purposes, but only from taxation for certain enumerated local purposes. Much of the able argument made by the learned counsel for the defendants was devoted to the consideration of the act of 1874, and to show that the plaintiffs are not exempted by that act from the operation of the act of 1889.

The determination of the present case, however, does not depend upon that point, but rather upon the inquiry whether the plaintiffs are within the act of 1889. The question to be resolved is, not whether the plaintiffs are exempted by the act of 1874, but whether it was the intention of the legislature to impose this tax upon them by the act of 1889. If it was, then the law must take its course, however opposed it may be to the spirit of all previous legislation upon this subject, and however contrary to the long practice and traditional usage of the commonwealth. The act of 1874 would not appear, therefore, to have much to do with the solution of this important question.

It is undoubtedly within the power of the state, acting through the general assembly, to lay its hands, in this manner, upon the revenues of every hospital within its borders, upon every asylum for the sick, the blind, the deaf and dumb, every home which the benevolence of man has created for the shelter of the orphan, the aged, the diseased and the cripple, and, in short, upon every institution which religion and charity have founded for the relief of human misery, the dissemination of virtue, the repression of vice and the amelioration of misfortune. The case of the plaintiffs is, therefore, the case of every purely public charity in the state, including those great public charities which the state has been accustomed for so many years to aid by its annual or biennial subsidies and gifts, without which many of them could not have been nurtured into existence and could not continue to be successfully carried on. If it was the plain intention of the legislature, by its acts, to subject all these public charities to taxation, which heretofore the state has only been intent upon fostering and aiding with her helping hands, alike by the enactment of laws to facilitate their pious and charitable work, and by the appropriation of public money for their assistance, then, however widely we may differ about the wisdom, or morality, or expediency of such legislation, we must nevertheless admit that it is clearly within the constitutional power of the legislature, because the constitution itself contains no exemptions, but only declares what property the legislature may, by general laws, exempt. In determining, however, the question at issue, we must remember that it is not incumbent upon the plaintiffs to show any exemption, until it is first clear-

ly demonstrated that they are subject to the tax; that they are clearly embraced within the words and the meaning of the act imposing the tax.

Now the act of 1889 imposes a tax upon certain descriptions of personal property, " owned, held or possessed by any person, persons, copartnership or unincorporated association, or company resident, located or liable to taxation within this commonwealth, or by any joint-stock company, association, limited partnership, bank or corporation, whether such personal property be owned, held or possessed by such person or persons, copartnership, unincorporated association, company, joint-stock company or association, limited partnership, bank or corporation, in his, her, their or its own right, or as active trustee, agent, attorney-in-fact, or in any other capacity, for the use, benefit or advantage of any other person, persons, copartnership, unincorporated association, company, joint-stock company, or association, limited partnership, bank or corporation."

It appears to us to be plain that the personal property intended to be taxed by this section is property owned or possessed by any person, copartnership, corporation or unincorporated association, in his or its own right, or as a trustee or agent for the use of some other person, copartnership, corporation or unincorporated body. Now, is any of the property described in the bill, in this case, so owned or possessed by the plaintiffs ? Clearly, according to the bill, they do not own a dollar of it in their own right or for their own use, and it is equally plain that they do not hold it as trustee or agent for the use of any other person, copartnership or corporation in any proper or legal sense. They do not, according to the bill, hold the property for any person whomsoever, but for certain charitable and religious objects. It does not at all follow that because the charitable and religious purposes to which the property is applied have relation to certain classes of people that, therefore, it is held for a person or persons. By " person," in the act, is meant a particular individual; one who could claim in the words of the act " the use, benefit or advantage " of the property; one who could enforce the trust in his favor. The trusts mentioned are not trusts for particular persons, but for particular objects. It may be that in the administration of the trusts for these charitable and religious objects

some person may be incidentally benefited, but he is not a person entitled by law to "the use, benefit or advantage" of the trust, or who has by law any beneficial interest or ownership in it whatever. The funds are not held in trust for any person whomsoever, but to be applied to the particular charities and religious purposes mentioned, in the discretion of the trustees; so that no person or individual can possibly be said to have any legal right or interest in it whatever. Nor can it be correctly said, in any legal sense, that the plaintiffs are trustees for any person. If that were so, such person could come into court and demand the "use, benefit or advantage" of the property held in trust for him. But it is quite plain that, as to the trusts described in the plaintiffs' bill, no person would for a moment have any standing in court to do that. No person exists who can say that he has any legal or equitable claim to the property held in trust by the plaintiffs, or to any "use, benefit or advantage" thereof. They do not hold it in trust for any person, but in trust for certain charitable and religious objects.

Now, if the legislature had intended by this act to depart from the usage and practice settled and steadily adhered to for a great number of years,—I might, perhaps, say from the foundation of the commonwealth,—of abstaining from taxing the personal property of charitable and religious associations; if it had intended to introduce so great a change in the public policy of the state as the defendants' counsel contend has been effected by this act, it is reasonable to suppose that they would have used no uncertain language to accomplish it. A simple enactment that personal property of the kind described in the act, owned or held by any person, partnership, corporation or association, either in his or its own right, or as trustee or agent, for any purpose whatsoever, would have accomplished the revolution in legislation upon this subject which the defendants contend has been accomplished by the act of 1889, and would have left no room for doubt or for argument. But it is not, in our judgment, reasonable to suppose that members of the legislature who voted for a bill taxing the personal property of persons and corporations, whether held in their own right or in trust for other persons, either knew or supposed that they were voting for a bill which taxed property held in trust, not for

any other person or persons, but for the maintenance of religion and public charity; that they were voting for a bill which overthrew all the previous policy of the state upon this subject, and which would authorize the tax gatherer to thrust his hand into the treasure chest of every charity and religious society in the state.

The public charities of the state have in times past, even from the time of Penn, been justly regarded as one of its chief glories. They have conferred upon the state benefits infinitely greater in value than any benefits of subsidies which, from time to time, it has conferred upon them. They have always been considered by even the most calculating of economists as benefactors of the state. Are we to suppose that, by such language as that which is used in the first section of this act, the legislature intended to tax every purely public charity, and every religious and philanthropic society in the state, every hospital and every refuge and home for the afflicted and the suffering, and yet exempted from the tax all "building and loan associations" as the same section does? Yet this very exception, it was argued by the defendants, went to show that the plaintiffs were included in the act, upon the principle of expressio unius est exclusio alterius. To us it appears to be one of the strongest indications in the whole act, showing that the legislature did not suppose or intend that purely public charities were within the words or the meaning of the act; that they did not intend to declare that building and loan associations were of more importance to the welfare of the state, and more entitled to its favor and fostering care than its hospitals, its homes for the sick and suffering, and all the societies for the promotion of religion and the dispensation of charity, which are scattered over all its broad domain, and that when they taxed personal estate held by persons or corporations in trust for the use, benefit and advantage of other persons, they did not intend to levy a tax upon all the charities and religious societies within the state. The exception of building and loan associations shows what was in the mind of the legislature.

It was also insisted by the defendants' counsel that, inasmuch as one of the old acts upon this subject, an act passed in 1846, excepted property held in trust for religious purposes, and, as there is no such exception in the act of 1889, therefore we

ought to conclude that the legislature did not intend in the act of 1889 to except such property. But such a conclusion would be altogether fallacious, for, as we have already seen, the question is not what property is excepted, but rather what property is made liable to the tax. If the act of 1846 were now in force, and did not contain the exception referred to, it would not cover the plaintiffs' case, for its terms would not embrace property held in trust for religious and charitable purposes, any more than the act of 1889 embraces it. In other words, the exception contained in the act of 1846 was altogether unnecessary, inasmuch as the property mentioned therein was not embraced by the terms of the act, and that was the uniform construction put upon it. No attempt was ever made to tax public charities under that act, although there was no exception in their favor in the act, but only of property held in trust for religious purposes, an expression which of course was not broad enough to comprehend the large class of public charities which could not be said to be for religious purposes.

The exception contained in the act of 1846 was inserted, doubtless, out of abundant caution, and to prevent disputes. But it was altogether unnecessary; for, as we have seen, it is unreasonable to suppose that a tax upon property held in trust for other persons is intended to embrace property not held in trust for other persons, but for purely public charitable purposes, in which no particular individual or person has any legal or equitable rights. Besides, it is a sufficient answer to the argument of the defendants' counsel upon this point to say that it is an unwarrantable assumption to assert that the legislature, when they were considering the act of 1889, had in their minds an act passed forty-three years before. It is not at all improbable that the person who drew the act of 1889 knew of the act of 1846, and that it was in the minds of the members of the legislature who enacted the act of 1889 is without any proof whatever, and is not to be presumed. It is assuming too much to suppose that every member of the legislature carries in his head all the multifarious acts which have been passed from time to time by previous legislatures, relating to any particular subject which may be under consideration.

The case of Erie Co. v. Water Works, 113 Pa. 368, cited by the defendants in their argument, has very little relation to the

point under discussion in the present case. In that case, it was held that real estate belonging to a municipal corporation, from which the municipality derived an income and revenue, was liable to be taxed for county purposes under the proviso of the act of 1874, since held in Sewickley Bor. v. Sholes, 118 Pa. 165, to be unconstitutional. On the other hand, it was held, in Erie Co. v. Erie City, 113 Pa. 360, that municipal property from which no income or revenue was derived was not taxable under the same proviso. But it is of little consequence now to inquire what the true construction of that proviso was, as it has fallen entirely out of the act since the decision in Sewickley Bor. v. Sholes. The question to be decided in the present case is not, in my judgment, a question arising under the exemption act of 1874, but a question as to what property is within the operative clauses of the act of 1889; a question whether, in imposing a tax upon certain descriptions of personal property held in trust for other persons, it was intended by the legislature to tax such property when held in trust, not for other persons or for any person, but for purely public charitable purposes. Upon that subject, after giving it the most thoughtful consideration, we are of the opinion that such property is not within the words nor the meaning of the act of 1889.

When the legislature of Pennsylvania, turning its back upon all the previous history of the state, shall deliberately resolve to recruit the finances of the commonwealth by a raid upon the treasuries of all the charities within its limits, by seizing money which has been devoted to pious and religious uses and to the relief of the distressed, they will doubtless do it at any rate in an open and manly way, and not by the use of doubtful phrases or ambiguous and concealed meanings. That they are not chargeable with having attempted to do it, by the passage of the act of 1889, we are fully convinced.

The demurrer is overruled.[2]

—The defendants having elected not to file any answer to the bill, the court then made a final decree ordering a perpetual injunction against the assessing or collecting of any state taxes upon the personal property specified in the bill,[1] and that the defendants pay the costs.[4] Thereupon, the defendants took this appeal, specifying that the court erred :

Arguments.

1. In granting the perpetual injunction.[1]
2. In overruling the demurrer.[2]
3. In not dismissing the bill.
4. In imposing the costs upon the defendants.[4]

*Mr. Rufus E. Shapley* and *Mr. W. S. Kirkpatrick,* Attorney General, (with them *Mr. Ellis Ames Ballard,*) for the appellants:

It is conceded on all hands that the legislature has power to tax money at interest, held for religious or charitable purposes. It must be conceded, also, that we have nothing to do with the supposed hardship of taxing such property: Iron City Bank v. Pittsburgh, 37 Pa. 340.

1. The question then is, whether the act of June 1, 1889, P. L. 420, was intended to and does tax such property. The comprehensive language of § 1 certainly includes the property described in this bill, whether it is held by the Presbyterian church for itself, i. e., for the advancement of its own interests, the spread of its own faith, the support of its own ministers, and the conversion of Jews, Indians and others to Christianity; or, is held for the use, benefit or advantage of any other person, persons, company or copartnership. The court below held that the plaintiff's property was not embraced in this act, so deciding upon the erroneous assumption that such property had never been taxed in this state, and that to make it taxable would be such a sweeping revolution of a settled policy as should require clearer and broader language than the act contains.

2. The erroneous character of this assumption will be seen when it is remembered: (*a*) That it was thought necessary to incorporate into the act of April 22, 1846, P. L. 486, a proviso expressly exempting such property; (*b*) that § 13, act of April 14, 1851, P. L. 625, repealed the exemption contained in the act of 1846, and expressly taxed all revenue-producing property; (*c*) that this act of 1851 was expressly held to tax such institutions as the appellee: Appeals from Taxation, 1 Phila. 418, affirmed by an unreported decision of this court, and by the Supreme Court of the United States in Christ Church Hospital v. Philadelphia Co., 24 How. 300; (*d*) that the act of May 14, 1874, P. L. 158, contains no exemption of any

Arguments.

revenue-producing property, held by way of endowment: Y. M.
C. A. Ass'n v. Donohugh, 7 W. N. 208; Thiel College v. Mer-
cer Co., 101 Pa. 530; Summit Grove Ass'n v. Sch. Dist., 12
W. N. 103.

3. In fact, at the time the act of 1889 was passed, and for
nearly forty years before, this kind of property was taxable,
as the following cases, comprising all the reported decisions
upon taxation of charities since 1846, will show: Appeals from
Taxation, 1 Phila. 418; Christ Church Hospital v. Philadel-
phia Co., 24 How. 300; Academy of Fine Arts v. Philadelphia
Co., 22 Pa. 496; Hospital v. Philadelphia Co., 24 Pa. 229;
Dauphin Co. v. St. Stephen's Church, 3 Phila. 189; Philadel-
phia v. University, 44 Pa. 360; Howard Ass'n App., 70 Pa.
344; German Soc. v. Philadelphia, 4 W. N. 213; Donohugh v.
Library Co., 86 Pa. 306; Y. M. C. A. Ass'n v. Donohugh, 7
W. N. 208; Burd O. Asylum v. Sch. Directors, 90 Pa. 21;
Delaware Co. Inst. v. Delaware Co., 94 Pa. 163; Miller's App.,
10 W. N. 168; Thiel College v. Mercer Co., 101 Pa. 530;
Cumru Tp. v. Poor D., 112 Pa. 264; Hunter's App., 1 Mona.
1; Northampton Co. v. Lafayette College, 128 Pa. 132; Phila-
delphia v. Women's Ch. Ass'n, 125 Pa. 572; Church of Our
Saviour v. Montgomery Co., 10 W. N. 170; Summit Grove
Ass'n v. Sch. Dist., 12 W. N. 103; Wagner Institute's App.,
116 Pa. 555; Wagner F. Inst. v. Philadelphia, 132 Pa. 612.

4. The court below is equally at fault in its reading of the
act of 1889, and has disregarded the purposes of its passage.
The taxation of personal property, as provided for in the acts
of April 29, 1844, P. L. 497, and April 22, 1846, P. L. 486,
remained undisturbed until the passage of the act of June 7,
1879, P. L. 112. In § 17, of the act of 1879, § 32 of the act
of 1844 was re-enacted. Since then, there has been continued
litigation upon two points: (1) Whether the personal prop-
erty of corporations was taxable, which was decided against
the state; and (2) whether property held in trust was still
taxable under the act of 1846, which was decided in the affirm-
ative: Philadelphia Trust Co.'s App., 17 W. N. 446; Price v.
Hunter, 21 W. N. 306. However, some doubt was thrown
upon the latter question in Loughlin's App., 19 W. N. 517.
The act of 1889 was then passed, for two main purposes:
(1) To include corporations in the section imposing personal

property tax, and (2) to incorporate the act of 1846 into the general revenue act, so as to remove all doubts as to the taxability of trust moneys.

5. The only part of the act of 1846, not copied into the act of 1889, was the proviso exempting moneys held in trust for religious purposes; and it is manifest that the legislature meant to tax all kinds of trust moneys which had been taxable under the act of 1846, and to include moneys held for religious purposes. The fourth proviso in § 21, act of 1889, throws a flood of light upon the meaning of the legislature, and clearly shows that the purpose of § 1 was to tax all property held in trust "for any purpose whatsoever." Moreover, even if the legislature had inserted a proviso expressly exempting property held for religious purposes, its constitutionality would be doubtful: Fox's App., 112 Pa. 355. The exemption of property held for sectarian purposes, or charities sectarian in character, would result in a species of enforced contribution from other taxpayers, to support objects with which they may not be in sympathy; and the only fund that can possibly be brought within the rule laid down in Burd O. Asylum v. Sch. Directors, 90 Pa. 21, is that for the relief of disabled ministers and their families.

*Mr. Joseph B. Townsend* (with him *Mr. George Junkin*), for the appellee.

The suggestion that the affirmance of this decree would advance one religious sect over another, has no foundation in fact. We are not arguing for charities attached to the Presbyterian church only, but for those of all denominations that recognize a Supreme Ruler. It is proper for the state to foster religious institutions as conservators of public morals and public order: 2 Story on Const., § 1783; Cooley on Religious Liberty, 471. But we are pleading the cause, not only of church charities, but of all hospitals, etc.

1. In construing tax laws, other statutes in pari materia, and the practice of the officers appointed to execute those laws, may be regarded: United States v. Collier, 3 Blatch. 325; Dwarris on Stat., 177, 236; Phillips on Ev., 558; Love v. Hinchly, 1 Abb. 436; Edwards v. Darby, 1 Wheat. 210. Although divers statutes taxing personal property, by the same

general terms as the act of June 1, 1889, have been passed since 1831, the state authorities never attempted, prior to 1889, to collect such tax from corporations created for learning, charity or religion, and this court has three times expressly held that the personal property of such institutions was not to be taxed: Donohugh v. Library Co., 86 Pa. 306 ; Burd O. Asylum v. Sch. Directors, 90 Pa. 21 ; Erie Co. v. Erie City, 113 Pa. 360.   It is not credible, then, that the legislature of 1889 meant to include the personalty of charities among the subjects of taxation, while omitting any express declaration to that effect. It is a cardinal rule in interpreting statutes imposing taxation, that they are to be construed most strongly against the state, and most favorably to the taxpayer: Dwarris on Stat., 742, 749 ; Gurr v. Scudds, 11 Exch. 190 ; Doe v. Smith, 8 Bing. 177 ; United States v. Wigglesworth, 2 Story 369 ; Barnes v. Doe, 4 Ind. 132.   They are not to be carried beyond the clear import of the words used: United States v. Watts, 1 Bond 580 : and taxes are not to be imposed upon vague or doubtful interpretations: Powers v. Barney, 5 Blatch. 202.

2. The question here is not one of exemption.   It is whether the act of 1889 taxes the securities held by the plaintiff.   The thought that runs through the whole act is that it is the person who gets the benefit of the fund who must pay the tax.   If it is owned in his own right by the person who holds it, he must pay the tax upon it.   When not held by him for his own use, it is not taxable as to him, but if it is held by him as agent or trustee for some other person or persons, it is made taxable. It is some definite, particular person or persons who are intended, and if the fund is held for no one in particular, or for some general object in the nature of a charity or public use, or for a class of charity-needing persons, the act does not make it taxable.   On examination, § 21 of the act, referred to in appellant's argument, will be found to relate to money-making corporations, etc., and the provisos inserted in that section were intended to reach attempted evasion of the tax by these money makers. The words of the fourth proviso do not enlarge, or in any way explain the idea expressed in the taxing clause of § 1, or throw the slightest light upon the question whether § 1 taxes money held for purely charitable purposes.   Their meaning is, simply, that the provisions of that section shall not affect the taxing

already ordained by § 1 upon property held for specific persons or corporations. The acts of 1846, 1851 and 1874 are very different in their terms from that of 1889.

PER CURIAM:

The opinion of the learned president of the court below is so clear and satisfactory, that we adopt it as the opinion of this court.

> The decree is affirmed, and the appeal dismissed at the costs of the appellants.