## Horn & Hardart Baking Company's Petition.

*Taxation—Tax on corporate loans—Exemption—Loans upon mortgages to trustees for charity—Acts of June 17, 1913, and July 15, 1919.*

1. A corporation which does business in this Commonwealth is subject to taxation upon mortgages upon which it pays the interest, even though it is not the mortgagor.

2. A mortgage held in trust, not for any person or corporation, but for a charitable object, is not subject to the tax on corporate loans imposed by the Act of July 15, 1919, P. L. 955, amending section 17 of the Act of June 17, 1913, P. L. 507.

3. A mortgage owned and held by the City of Philadelphia, as trustee under the will of Stephen Girard, for the support and education of poor, white male orphans at Girard College, in accordance with Girard's will, is a mortgage held in trust for a charitable object and is not subject to taxation under the acts cited.

Department of Justice. Opinion to Hon. Clyde L. King, Secretary, Board of Finance and Revenue.

METZGER, Asst. Dep. Att'y-Gen., June 25, 1925.—F. H. Lehman, Esq., at the time Secretary of the Board of Public Accounts, referred to this department the capital stock and corporate loans report of the Horn & Hardart Baking Company for the calendar year ending Dec. 31, 1920, together with a petition and supplementary petitions and affidavits addressed to the Board of Public Accounts relative to the taxation of a certain mortgage which had been held subject to the tax, and a settlement for such tax made thereon by the Auditor General and approved by the State Treasurer, and which mortgage said company, petitioner, contended was exempt from taxation.

The Board of Public Accounts, through its secretary, requested an opinion from this department upon the question of the taxability of this mortgage. By reason of the provisions of the Act of June 7, 1923, P. L. 498, 551, whereby the powers by law vested in and imposed upon the Board of Public Accounts, so-called, created by the Act of April 8, 1869, P. L. 19, are to be exercised by the Board of Finance and Revenue, created by the said Act of June 7, 1923, I am addressing this opinion to you.

### Facts.

The Horn & Hardart Baking Company, as appears from the capital stock report filed for the calendar year ending Dec. 31, 1920, is a corporation incorporated under the laws of the State of New Jersey for the purpose of the manufacture and sale of edibles and foodstuffs, in which business it was engaged during the said year.

The said company filed its capital stock and corporate loans report for the said calendar year in the office of the Auditor General of the Commonwealth of Pennsylvania Feb. 17, 1921. A settlement of the tax upon the capital stock and the corporate loans for the said calendar year was made by the Auditor General Feb. 25, 1921, and approved by the State Treasurer March 2, 1921. A resettlement of the tax upon the corporate loans was made by the Auditor General April 20, 1921, and approved by the State Treasurer April 21, 1921, wherein and whereby a tax was imposed upon corporate loans at the proper rate in the amount of $820, from which a deduction of treasurer's commission in the amount of $41 was allowed, fixing the amount of the tax as resettled at the sum of $779. The said tax was imposed upon the valuation of such corporate loans in the amount of $205,000, included within which amount was a mortgage in the sum of $130,000, owned and held by the City of Philadelphia, trustee of the Girard Estate.

The said Horn & Hardart Baking Company did not take an appeal from the said settlement of tax, and made payment thereof into the State Treasury May 25, 1921.

The president and assistant treasurer of the said company presented a petition to the Board of Public Accounts, which was filed therewith June 15, 1922, wherein it prayed for a remission of the tax upon the said mortgage in the amount of $494, which was the amount of the tax at the proper rate, to wit, $520, less the commission allowed to the treasurer of the company under the law in the amount of $26. The basis upon which it prayed for such remission was that the mortgagee in such mortgage was the "City of Philadelphia as Trustee of the Estate of Stephen Girard."

In supplemental petitions and affidavits presented to the Board of Public Accounts it appeared that the said mortgage was owned and held by the said City of Philadelphia as trustee under the will of Stephen Girard, and was held by said trustee "for, and the interest received therefrom used and applied to, the support and education of poor, white male orphans at Girard College, free of expense to them, in accordance with the will of Stephen Girard, deceased."

It does not appear that the said Horn & Hardart Baking Company were the mortgagors in such mortgage. It is established by the corporate loans report filed that the said company did pay the entire amount of interest due upon such mortgage during the said calendar year, 1920, the period of time for which the report was filed and upon which basis the tax was settled.

### Question.

The question raised is whether or not a mortgage held in trust, not for any person or corporation, but for a charitable object, is subject to the tax

imposed by the Act of July 15, 1919, P. L. 955, amending section 17 of the Act of June 17, 1913, P. L. 507, and if not, whether the Girard Estate is such a public charity as to make the mortgage in question exempt from such tax?

## Discussion.

As set forth in the finding of facts, it does not appear that the said Horn & Hardart Baking Company created the said mortgage. On the contrary, it is to be inferred from the facts that it did not, but purchased the property, upon which the said mortgage was a lien, subject to such mortgage. It does not appear that any bond had been given by the mortgagor as security for the payment of which bond the mortgage was given. Hence, it does not appear that the company had assumed such bond. However these facts may be, they are not pertinent to the present issue by reason of the provisions of the said Act of July 15, 1919, P. L. 955. Under the provisions of this act the tax is imposed upon "all scrip, bonds, certificates and evidences of indebtedness issued, and all scrip, bonds, certificates and evidences of indebtedness assumed, or on which interest shall be paid, by any and every private corporation, incorporated or created under the laws of this Commonwealth, or the laws of any other State or of the United States, and doing business in this Commonwealth. . . . ." The company did business in this Commonwealth and did pay the interest upon this mortgage. Therefore, if such mortgage falls within the above stated classes of obligations upon which the said company paid interest, such mortgage is subject to the tax, and under and by the provisions of the Act of July 15, 1919, P. L. 955, and of the Act of July 21, 1919, P. L. 1067, it is the duty of the treasurer of the company, upon the payment of the interest thereon, to assess the tax imposed and to make report of such indebtedness to the Auditor General and make deduction of the tax and return the same into the State Treasury in accordance with the provisions of the said acts of assembly.

In the case of the Philadelphia Co. for Guaranteeing Mortgages v. Guaranty Realty Co., 78 Pa. Superior Ct. 258, Judge Keller interpreted and construed the Act of July 15, 1919, P. L. 955, amending section 17 of the Act of June 17, 1913, P. L. 507. In a full and carefully considered opinion, he reviewed the history of the legislation bearing upon the subject, and the decisions of the courts upon prior legislation, and held, *inter alia*, that "This amendment makes two things clear: First, that the State tax on corporate loans is extended from 'all scrip, bonds or certificates of indebtedness issued' by the corporations referred to in the 17th section of the Act of 1913, to 'all scrip, bonds, certificates and evidences of indebtedness issued, . . . assumed or on which interest shall be paid' by such corporations; and, second, that the securities made taxable for county purposes under section 1 of the Act of 1913 are to be restricted to such as cannot be made taxable under section 17, as amended; that, while the State, in its generosity, has turned over to the several counties for their own use all, instead of three-fourths, of the tax derived from the kinds of personal property enumerated in section 1, it has reduced the subjects taxable for county purposes under that section by transferring to section 17, to be taxed for State purposes, loans and indebtedness assumed by or on which interest is paid by corporations organized or doing business in this Commonwealth, in addition to those issued by such corporations, and by enlarging its scope so as to include all evidences of indebtedness and not merely scrip, bonds and certificates; and has provided that the State is to have the right of way, and if any securities are apparently, by the language of the act, taxable under both sections, the 17th section is to prevail

and the 1st section is to be confined to such securities as cannot be made taxable under section 17."

In answer to a contention "that, as 'all mortgages' are included under section 1 (of the Act of June 17, 1913, P. L. 507), and mortgages are not specifically made taxable in section 17, no mortgages can be taxed under section 17," he said:

". . . But this construction would apply to mortgages issued by corporations, no less than to those only assumed by them or on which they pay interest, and the whole history of our tax legislation and the settled course of the decisions thereon negatives any such conclusion.

"The words 'all mortgages' appeared in every act imposing a State tax on personal property to be assessed and collected through the local tax authorities, from the Act of April 29, 1844, P. L. 486, 492, down to the Act of May 11, 1911, P. L. 265, and yet, since the Act of June 30, 1885, P. L. 193, it was never disputed that the provisions for the assessment of a tax for State purposes on the nominal value of scrip, bonds or certificates of indebtedness issued by corporations organized or doing business in Pennsylvania by the treasurers of such corporations and the deduction by them of the same from the interest paid resident holders of such indebtedness, included the interest on mortgages or on the bonds secured by such mortgages issued by such corporations; and that the mortgages returned to the local authorities for assessment and taxation on their actual value comprised only mortgages which were not taxable as such corporate indebtedness. Money at interest was thus taxable in two distinct ways. If it was embraced within scrip, bonds or certificates of indebtedness issued by corporations incorporated in or doing business in Pennsylvania—and this included mortgages securing bonds issued by such corporations—it was taxed on its nominal or par value, and the tax was assessed and collected for the State by the treasurer of such corporation. If it was not, it was assessed at its actual value by the local assessor and collected by the local tax collector. The term 'mortgage,' as used in the acts imposing a tax on personal property, clearly means 'mortgage indebtedness.' "

He further held (see page 265 of the opinion) that, ". . . when we examine the 17th section of the Act of 1913, even before its amendment in 1919, we find in one of its provisos—re-enacted in the Amendment in 1919, and quoted above as a part of said amendment—that mortgages are specifically mentioned as one of the corporate securities embraced within its provisions, thus showing that mortgages issued by the corporations specified in the 17th section were taxable under that section and not by the 1st section of the Act of 1913. It follows that since the 17th section was enlarged by the Amendment of 1919 so as to include all 'evidences of indebtedness' on which the corporation pays interest, mortgage indebtedness on which the corporation pays interest is subject for taxing purposes to the 17th and not the 1st section of the act, as amended. . . ."

In conclusion, he held that "The Act of July 15, 1919, P. L. 955, amending section 17 of the Act of 1913, imposes a tax for State purposes on all evidences of indebtedness issued or assumed by corporations, incorporated in or doing business in this Commonwealth, or upon which they pay interest. Since the amendment, all such evidences of indebtedness are obligations of the company for tax purposes, within the meaning of the 18th section, directing how the tax imposed in section 17 shall be assessed and collected. . . ."

Mortgages upon which a corporation which does business in the Commonwealth pays interest being, therefore, a subject of taxation under the pro-

visions of the Act of July 15, 1919, P. L. 955, and by the provisions of the Act of July 21, 1919, P. L. 1067, it being the duty of the treasurer of the company, upon the payment of the interest thereon, to assess the tax imposed, make report of the amount of the indebtedness owned by residents of the Commonwealth to the Auditor General, make deduction of the tax and return the same into the State Treasury, we turn to the consideration of the main question involved.

The mortgage here in question was owned and held by the City of Philadelphia as trustee under the will of Stephen Girard, deceased, and was held by the said trustee "for, and the interest received therefrom used and applied to, the support and education of poor, white male orphans at Girard College, free of expense to them, in accordance with the will of Stephen Girard, deceased." That the provisions of the will of Stephen Girard created valid trusts which are of "an eleemosynary nature, and charitable uses in a judicial sense," was determined by the Supreme Court of the United States in the case of Vidal et al. v. Girard's Executors, 2 How. 127, 11 Law Ed., 205. The Supreme Court of the United States also said in this latter case, "not only are charities for the maintenance and relief of the poor, sick and impotent charities in the sense of the common law, but also donations given for the establishment of colleges, schools and seminaries of learning, and especially such as are for the education of orphans and poor scholars." See, also, City of Philadelphia v. Girard's Heirs, 45 Pa. 9.

In Donohugh's Appeal, 86 Pa. 306, the court below, whose opinion was affirmed in a per curiam opinion by the Supreme Court, said: "The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality that gives it its public character. The smallest street in the smallest village is a public highway of the Commonwealth, and none the less so because a vast majority of the citizens will certainly never derive any benefit from its use. It is enough that they may do so if they choose. So there is no charity conceivable which will not, in its practical operation, exclude a large part of mankind, and there are few which do not do so in express terms or by the restrictive force of the description of the persons for whose benefit they are intended. Thus, Girard College excludes, by a single word, half the public, by requiring that only male children shall be received; the great Pennsylvania Hospital closes its gates to all but recent injuries, yet no one questions that they are public charities in the widest and most exacting sense."

In the case of General Assembly v. Gratz, 139 Pa. 497, the question was whether or not "the moneys and securities which it is admitted by the demurrer are held by the plaintiffs as trustees for purely public charitable purposes are taxable under the Act of June 1, 1889, for State purposes."

The said Act of June 1, 1889, § 1, P. L. 420, imposed an annual tax for State purposes of three mills on each dollar of the value of ". . . all personal property of the classes hereinafter enumerated, owned, held or possessed by any person, persons, copartnership, or unincorporated association or company, resident, located or liable to taxation within this Commonwealth, or by any joint stock company or association, limited partnership, bank or corporation whatsoever, formed, erected or incorporated by, under or in pursuance of any law of this Commonwealth or of the United States, or of any other state or government, and liable to taxation within this Commonwealth, whether such personal property be owned, held or possessed by such person or persons, copartnership, unincorporated association, company, joint stock company or association, limited partnership, bank or corporation in his, her,

their or its own right, or as active trustee, agent, attorney-in-fact or in any other capacity, for the use, benefit or advantage of any other person, persons, copartnership, unincorporated association, company, joint stock company or association, limited partnership, bank or corporation. . . ."

The court below, whose opinion was adopted by the Supreme Court, said, on pages 504, 505 and 506:

"It appears to us to be plain that the personal property intended to be taxed by this section is property owned or possessed by any person, copartnership, corporation or unincorporated association, in his or its own right, or as a trustee or agent for the use of some other person, copartnership, corporation or unincorporated body. Now, is any of the property described in the bill in this case so owned or possessed by the plaintiffs? Clearly, according to the bill, they do not own a dollar of it in their own right or for their own use, and it is equally plain that they do not hold it as trustee or agent for the use of any other person, copartnership or corporation in any proper or legal sense. They do not, according to the bill, hold the property for any person whomsoever, but for certain charitable and religious objects. It does not at all follow that, because the charitable and religious purposes to which the property is applied have relation to certain classes of people that, therefore, it is held for a person or persons. By 'person,' in the act, is meant a particular individual; one who could claim in the words of the act 'the use, benefit or advantage' of the property; one who could enforce the trust in his favor. The trusts mentioned are not trusts for particular persons, but for particular objects. It may be that in the administration of the trusts for these charitable and religious objects some person may be incidentally benefited, but he is not a person entitled by law to 'the use, benefit or advantage' of the trust, or who has by law any beneficial interest or ownership in it whatever. The funds are not held in trust for any person whomsoever, but to be applied to the particular charities and religious purposes mentioned in the discretion of the trustees; so that no person or individual can possibly be said to have any legal right or interest in it whatever. Nor can it be correctly said, in any legal sense, that the plaintiffs are trustees for any person. If that were so, such person could come into court and demand the 'use, benefit or advantage' of the property held in trust for him. But it is quite plain that, as to the trusts described in the plaintiffs' bill, no person would for a moment have any standing in court to do that. No person exists who can say that he had any legal or equitable claim to the property held in trust by the plaintiffs, or to any 'use, benefit or advantage' thereof. They do not hold it in trust for any person, but in trust for certain charitable and religious objects.

"Now, if the legislature had intended by this act to depart from the usage and practice settled and steadily adhered to for a great number of years—I might, perhaps, say from the foundation of the Commonwealth—of abstaining from taxing the personal property of charitable and religious associations; if it had intended to introduce so great a change in the public policy of the State as the defendants' counsel contend has been effected by this act, it is reasonable to suppose that they would have used no uncertain language to accomplish it. A simple enactment that personal property of the kind described in the act, owned or held by any person, partnership, corporation or association, either in his or its own right, or as trustees or agent, for any purpose whatsoever, would have accomplished the revolution in legislation upon this subject which the defendants contend has been accomplished by the Act of 1889, and would have left no room for doubt or for argument. But it

is not, in our judgment, reasonable to suppose that members of the legislature who voted for a bill taxing the personal property of persons and corporations, whether held in their own right or in trust for other persons, either knew or supposed that they were voting for a bill which taxed property held in trust, not for any other person or persons, but for the maintenance of religion and public charity; that they were voting for a bill which overthrew all the previous policy of the State upon this subject, and which would authorize the tax gatherer to thrust his hand into the treasure chest of every charity and religious society in the State."

The conclusion of the court was that the property in question was not such property as was made taxable by the said Act of June 1, 1889.

In the case of Mattern v. Canevin, 213 Pa. 588, the question was whether or not a mortgage given by an individual to secure the balance of the purchase money on a cathedral property and held by the defendant for religious and charitable purposes was subject to the personal property tax imposed by the Act of June 8, 1891, P. L. 229.

Section 1 of the Act of June 8, 1891, P. L. 229, amends section 1 of the said Act of June 1, 1889, P. L. 420. This amendment, however, did not change the subject of taxation. It simply changed the rate, increasing the same from three mills on each dollar of the value of the property made subject to the tax to four mills.

The Supreme Court in this case expressly affirmed its decision in General Assembly v. Gratz, 139 Pa. 497, construing the Act of June 1, 1889, P. L. 420, and after stating that the Act of June 8, 1891, P. L. 229, was a re-enactment of the Act of 1889, except as to the rate of taxation, held that the legislature intended that the rule laid down in General Assembly v. Gratz, 139 Pa. 497, was to be regarded as the settled policy of the State "in reference to the exemption of actual places of religious worship and institutions of purely public charity from taxation."

In conclusion, the Supreme Court said: ". . . The mortgage was held by the trustee for the use of St. Paul's Roman Catholic Congregation, 'solely for the same objects of religion and purely public charity' as the real estate which had been sold and for part of which purchase price this mortgage was given. The 'real estate' mentioned was the old cathedral property, which it is conceded was used as an actual place of religious worship and for purposes of purely public charity. These conceded facts bring the case within the rule stated and the mortgage is exempt."

It will thus be seen that the mortgage in this case was held to be exempt from taxation "because of the uses and purposes for which it is held."

In the case of Com. v. William M. Lloyd Co., 15 Dauphin Co. Reps. 149, the facts were as follows: A settlement had been made by the accounting officers of the Commonwealth against the said company for a tax on loans for the year 1908. An appeal was taken from the settlement, and upon hearing thereof by the court, it appeared that the defendant company was the owner of real estate in the City of Philadelphia, which, at the time of its purchase, was covered by a mortgage given by an individual "to the City of Philadelphia, Trustee of Stephen Girard, deceased." This mortgage was a part of the residuary fund of that trust which is "used solely for the care and maintenance of Girard College, in the City of Philadelphia, and for the free education, support and maintenance therein of poor, white male orphan children in the State of Pennsylvania, without restriction to any class thereof or as to locality or residence of such children." It further appeared that the defend-

ant company had executed and delivered a bond to the said trustee as collateral security for the payment of the principal sum and interest secured by the said mortgage, in which bond the said company agreed to answer for the default of the mortgagor. The mortgage having matured and being unpaid, the defendant company paid the interest for the succeeding years, including the year for which the accounting officers had imposed the tax, the settlement of which tax was the basis of the appeal in question. The tax was imposed under the provisions of the Act of June 30, 1885, P. L. 193, and the Act of June 1, 1889, as amended by the Act of June 8, 1891, P. L. 229. The tax charge was four mills upon the amount of the mortgage, less the treasurer's commission.

In the fore part of his opinion, Judge Kunkel gave consideration to the question as to whether or not the tax claim was to be treated as charged upon the mortgage or upon the bond for which it had been given as collateral security. He expressed the opinion that in neither case would the defendant company be liable for the payment of the tax. He considered the provisions of the Act of June 8, 1891, P. L. 229, and called attention to the fact that under the language of the act the mortgage was not subject to the tax for the reason that it was not an obligation issued by the corporation, which mortgages alone were subject to the tax. With reference to the bond, he held that the obligation was one of suretyship, and, therefore, did not fall within the phrase "loans issued by any corporation," or "including . . . loans secured by bonds or any other forms of certificate or evidence of indebtedness. . . ." He held that the bond was issued, not to represent any indebtedness of the defendant company, but for the purpose of securing the indebtedness of the mortgagor. Turning to a consideration of section 4 of the Act of June 30, 1885, P. L. 193, which provides for the assessment and collection of the tax on corporate indebtedness, he held that, under the provisions of the act, the bond, given as collateral security, was not a bond evidencing an indebtedness of the company as contemplated by the provision of the said section. He denied the contention of the Commonwealth that the company, by giving the bond and paying the interest to the holder of the mortgage upon the default of the mortgagor, thereby assumed the payment of the mortgage and was bound to assess and collect the tax. Judge Kunkel said: "The tax on the mortgage, if collectible at all, was collectible, like the tax on all individual indebtedness, through the local authorities."

This portion of the opinion is no longer pertinent by reason of the provisions of the Acts of July 15, 1919, P. L. 955, and July 21, 1919, P. L. 1067.

However, Judge Kunkel did not base his decision solely, if at all, upon this portion of his opinion. He held that the holder of the mortgage was not subject to the tax because it was held "in trust, not for any person or corporation, but for a charitable object." This portion of Judge Kunkel's opinion reads as follows: "We might rest our decisions of this case upon the grounds above stated, were we not satisfied that the defendant company is not liable for the tax on the mortgage debt for the more cogent reason that the mortgage was not taxable. It was held by the trustee of Stephen Girard, deceased, in trust, not for any person or corporation, but for a charitable object. In General Assembly v. Gratz, 139 Pa. 497, it was determined that 'funds held in trust, not for particular persons, but for charitable and religious objects in which no particular individual or person has any legal or equitable rights, the beneficiaries being selected from year to year, at the discretion of the trustees, out of indefinite classes of persons, are not subject to the personal property tax provided in the Act of June 1, 1889, P. L. 420; and in Mattern.

*v.* Canevin, 213 Pa. 588, it was held that a mortgage taken to secure the purchase money of a church building and held for religious and charitable purposes is not subject to the tax imposed by the Act of June 8, 1891, P. L. 229. These cases establish the lack of legislative authority for the loans tax on the mortgage in the present case. As there was no tax imposed, there was no duty upon the defendant company to assess and collect it."

It will be observed that in each of the three cited cases the conclusion of the courts was based upon the language of the first sections of the said Acts of June 1, 1889, P. L. 420, and June 8, 1891, P. L. 229, the courts holding that the particular property in question, in each case being held for a religious or charitable use or object, was not intended to be made subject to the tax because the language of the said acts did not evidence an intent to tax such property. Did the Act of June 17, 1913, P. L. 507, and the amendment of section 17 thereof by the Act of July 15, 1919, P. L. 955, change the law and make such property subject to tax? When we examine section 1 of the said Act of June 17, 1913, P. L. 507, we find no change in the subject of taxation or its rate. The language of the first paragraph in section 1 is exactly similar to that of the first paragraph of the Act of June 8, 1891, P. L. 229.

In the case of Philadelphia Co. for Guaranteeing Mortgages *v.* Guaranty Realty Co., 78 Pa. Superior Ct. 258, 260, the court said: "The Act of June 17, 1913, P. L. 507, which was enacted after the settlement of the tax involved in the Du Pont case, used practically the same language, with respect to the subjects taxable for State purposes (section 17), as was contained in the Act of 1885 (section 4); its greatest difference, and chief purpose, was to provide that the tax (now four mills) on moneyed capital in the hands of individual residents of this Commonwealth, commonly known as the personal property tax, originally imposed by the Acts of April 29, 1844, § 32, P. L. 492, 497, and re-enacted from time to time with but few changes in the Acts of June 7, 1879 (§ 17), P. L. 112; June 30, 1885 (§ 1), P. L. 193; June 1, 1889, P. L. 420; June 8, 1891, P. L. 229; May 1, 1909, P. L. 298, and May 11, 1911, P. L. 265, should be assessed and collected for county purposes only, instead of for State purposes, with a return by the State to the county of one-third (Act of 1889) or three-fourths (Act of 1891): Provident Life and Trust Co. *v.* Klemmer et al., 257 Pa. 91, 100. The decision in the ˥Du Pont case, therefore, applied with equal force to the Act of 1913."

And see opinion of Deputy Attorney-General Kun, under date of July 28, 1916, reported in 45 Pa. C. C. Reps. 551; 25 Dist. R. 1153.

The amendment of section 17 by the said Act of 1919 simply made taxable for State purposes certain subjects of tax which, under the Act of June 17, 1913, P. L. 507, were subject to tax for county purposes only, namely, those obligations which had been assumed or on which interest had been paid by any and every private corporation incorporated or created under the laws of this Commonwealth or the laws of another state or of the United States and doing business in this Commonwealth. It will thus be seen that, under the provisions of the Act of July 15, 1919, the subjects of taxation are exactly similar to those contained in the said Acts of June 17, 1913, P. L. 507, June 8, 1891, P. L. 229, and June 1, 1889, P. L. 420. The effect of the said Act of 1913 was to divide the former subjects of the personal property tax into certain classes for county purposes and State purposes respectively. The effect of the said Act of 1919 was to remove certain subjects of taxation from the class for county purposes into the class for State purposes.

There is nothing in either the Act of 1913 or its amendment of 1919 which indicates an intent on the part of the legislature to upset "the settled policy

of the State in reference to the exemption of actual places of religious worship and institutions of purely public charity from taxation." (See Mattern *v.* Canevin, 213 Pa. 588.) Being of the opinion that the subjects of taxation in the Acts of 1889, 1891, 1913 and 1919 are similar, the rule of law declared in the cited cases of General Assembly *v.* Gratz, 139 Pa. 497, Mattern *v.* Canevin, 213 Pa. 588, and Com. *v.* William M. Lloyd Co., 15 Dauphin Co. Reps. 149, is applicable to the said Act of 1919 in the absence of express language showing a contrary intent.

I am, therefore, of the opinion that this mortgage is not subject to the tax imposed under and by the provisions of the Act of July 15, 1919, P. L. 955, and that, therefore, the said Horn & Hardart Baking Company and its treasurer were not subject with reference thereto to the provisions of the Act of July 15, 1919, P. L. 958, and the Act of July 21, 1919, P. L. 1067.

From C. P. Addams, Harrisburg, Pa.