## Union Trust Company of Pittsburgh's Account.
### (Allegheny County's Appeal.)

Argued March 24, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John Joseph O'Connell,* Assistant County Solicitor, with him *Charles Alvin Jones,* County Solicitor, for appellant.

*John G. Buchanan,* of *Smith, Buchanan, Scott & Ingersoll,* with him *William J. Kyle, Jr.,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, April 19, 1937:

The question here involved is whether the securities, given by Henry C. Frick in his will to Princeton University, and now in the hands of the Union Trust Company of Pittsburgh, are liable to the four mills tax, payable to Allegheny County, because Princeton University turned them over to the Trust Company for control and management, under a trust agreement; the income therefrom being payable to the University and, of course, ultimately the corpus going back to it. The orphans' court determined the tax not payable and the County of Allegheny appeals.

Unless we are to overturn the long established policy of the Commonwealth that the personal property of charities devoted to charitable uses is not subject to taxation, the conclusion of the lower court must be affirmed. We think the legislation brought to our attention by the county's advocate, who argued from it the existence of tax liability, does not require us to make such a wide departure from established principle, and that the legislature, if such is to be brought about, must clearly indicate its purpose. It is stipulated of record that Princeton University is a charity and that its property is held for charitable purposes. "The Trustees of Princeton University, a corporation organized and existing under the laws of the State of New Jersey, now is and at all times since its foundation has been, an institution of purely public charity. It is an institution of

learning founded, endowed and maintained by public or private charity. The entire revenue derived by it is applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose."

The county bases its right to tax on the Act of June 17, 1913, P. L. 507, No. 335, Sec. 1, 72 P. S. Sec. 4821, as amended.* Eliding words not applicable to the present situation, it reads: "That all personal property of the classes hereinafter enumerated . . . held or possessed by any . . . bank or corporation . . . whether such personal property be . . . held or possessed by such . . . bank or corporation in . . . its own right, or as active trustee, for the use, benefit, or advantage of any other . . . corporation,—is hereby made taxable annually for county purposes" at the rate of four mills. The position which the county takes is thus stated in its brief: "The Union Trust Company of Pittsburgh is holding the personal property as an active trustee under a deed of trust executed by The Trustees of Princeton University, a corporation, for its (Princeton's) use, benefit and advantage. The act requires a holder of the designated securities to return and pay the tax, as well as the owner of such securities." This is a too narrow view of the act. The act says, "held for the benefit of any other corporation." It cannot be said, without disregarding wholly the purpose of Mr. Frick's benefaction, that the securities are held for the benefit of Princeton University as a corporation,—they are held to help effectuate and carry out the charitable purpose for which "The Trustees of Princeton University" is a name as it were; for the benefit of the realities which are behind the name.

---

* April 30, 1929, P. L. 871, Sec. 1; May 2, 1929, P. L. 1509, Sec. 1; April 21, 1933, P. L. 54, Sec. 1.

In *General Assembly v. Gratz,* 139 Pa. 497, 20 A. 1041, decided in 1891, in which the opinion of Judge THAYER of the Court of Common Pleas was adopted as the opinion of this court and where the question was whether money and securities held by the General Assembly of the Presbyterian Church as trustee for charitable purposes, amongst others for Princeton Theological Seminary, were taxable for State purposes and where the language of the taxing statute was similar to that in the act we are now reviewing, it was said (p. 504) : "It appears to us to be plain that the personal property intended to be taxed by this section is property owned or possessed by any . . . corporation . . . as a trustee . . . for the use of some other . . . corporation. . . . Now, is any of the property . . . so owned or possessed by the plaintiffs?  Clearly, according to the bill, they do not own a dollar of it in their own right or for their own use, and it is equally plain that they do not hold it as trustee . . . for the use of any other . . . corporation in any proper or legal sense . . . but for certain charitable and religious objects. . . . Now, if the legislature had intended by this act to depart from the usage and practice settled and steadily adhered to for a great number of years,—I might, perhaps, say from the foundation of the Commonwealth,— of abstaining from taxing the personal property of charitable and religious associations; if it had intended to introduce so great a change in the public policy of the state as the defendants' counsel contend has been effected by this act, it is reasonable to suppose that they would have used no uncertain language to accomplish it. . . . But it is not, in our judgment, reasonable to suppose that members of the legislature who voted for a bill taxing the personal property of persons and corporations, whether held in their own right or in trust for other persons, either knew or supposed that they were voting for a bill which taxed property held in trust, not for any other person or persons, but for the maintenance of re-

ligion and public charity; that they were voting for a bill which overthrew all the previous policy of the state upon this subject, and which would authorize the tax gatherer to thrust his hand into the treasure chest of every charity and religious society in the state."

The principle of *General Assembly v. Gratz* was reannounced in *Mattern v. Canevin*, 213 Pa. 588, 63 A. 131 (1906), where it was said (p. 589) : "Certainly the courts would not feel called upon to adopt a different rule of construction in the absence of legislative enactment which in clear and express terms should provide for the taxation of property so held." After calling attention to the fact that the Act of 1891 then being construed was a re-enactment of the Act of 1889 considered in *General Assembly v. Gratz* and that it was approved almost five months after the rule in that case was announced, the opinion goes on to say : "It is therefore reasonable to presume the legislature intended the rule in that case to be the settled policy of the state in reference to the exemption of actual places of religious worship and institutions of purely public charity from taxation."

In *Buhl's Estate*, 300 Pa. 29, 150 A. 86 (1930), where the same question again came up,—the taxability of securities devised for charitable objects, and in which the act being considered was the same as here (Act of June 17, 1913) we said (p. 32) : "On the point under consideration, this section of the statute is exactly the same as section 1 of the Act of June 1, 1889, P. L. 420, which was construed in *General Assembly v. Gratz*, 139 Pa. 497, and section 1 of the Act of June 8, 1891, P. L. 229, which was construed in *Mattern v. Canevin*, 213 Pa. 588, as not imposing this character of tax upon securities devoted to public charity. This being so, the general rule applies that where in a later act the legislature uses the same language as in a prior cognate statute, which had been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way

it previously had been when considering the earlier statute: *Spangler's Est.*, 281 Pa. 118; *Bell v. Bell*, 287 Pa. 269. It will be noticed that the decisions in *General Assembly v. Gratz*, supra, and *Mattern v. Canevin*, supra, are not based on an exempting clause in any statute, but on the legal conclusion that the true interpretation of the Acts of 1889 and 1891, is that the legislature did not intend to abandon its long established policy of refusing to tax securities devoted to purely public uses."

It is suggested that there is a distinction between charities located in other states and those within our own. Under the law as it exists, there is no difference so far as taxation is concerned. In *General Assembly v. Gratz*, one of the charitable objects was Princeton Theological Seminary at Princeton, New Jersey. If any distinction is to be made, it must be by the legislature.

It is argued in effect by appellant that in order to be free from taxation, an exemption must be found in the Act of May 22, 1933, P. L. 853, Sec. 204, 72 P. S. Sec. 5020-204, which provides for the exemption of "All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same shall be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose." The argument is that this only exempts real property. We think this act has nothing to do with the pending controversy. It applies in cases where the act would otherwise levy the tax. Here our conclusion is that the Act of 1913, as amended, does not levy the tax.

The decree is affirmed at appellant's cost.