Decree affirmed. Costs on Wheatcroft-Rosengarten.

### Ed. McKean Oldsmobile Co. *v.* Pittsburgh, Appellant.
### Ed. McKean Oldsmobile Co. *v.* Pittsburgh School District, Appellant.

Argued March 22, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Regis C. Nairn*, Assistant City Solicitor, with him *David W. Craig*, City Solicitor, for City of Pittsburgh, appellant.

*Edmund W. Ridall, Jr.*, Assistant Solicitor, and *Niles Anderson*, Solicitor, for school district, appellant.

*Maurice Chaitkin*, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, April 17, 1962:

In Pittsburgh the Oldsmobile Division of the General Motors Corporation has established what is known as a Car Locator System, that is to say, in a certain

office a file of cards is maintained with a description of every Oldsmobile automobile available for sale by all the dealers in the Pittsburgh Zone, which covers half of Pennsylvania, and part of West Virginia, Ohio and Maryland. Under this system any Oldsmobile dealer who does not have the particular car which a prospective customer is seeking asks the Oldsmobile Zone Office if that car is in stock in any other nearby dealer's place of business. If it is, the inquiring dealer then communicates with the possessing dealer and they agree between themselves as to how the transfer of the desired car is to be effected.

The transfer can be arranged in one of several ways:

1. Dealer A, the inquiring dealer, may deliver to Dealer B, the possessing dealer, a car of a similar model in exchange for the car he wishes. This would result in an even exchange of inventory.

2. Dealer A could supply Dealer B with a car of a different model and style from the one he is seeking, and the difference in price of the cars, if any, would be adjusted through cash payments based on the invoice cost of both cars.

3. Dealer A could directly pay to Dealer B exactly what B had paid for the car. If B had to finance the purchase of the car he would not collect from A any interest he may already have paid in the financing transaction. This amount would be written off as loss by Dealer B.

4. If Dealer B added accessories to the car after he purchased it, A would reimburse B the actual cost of the accessories.

This practice, which is known in the trade, as the "swapping" of cars, has been found to be satisfactory all the way around. A dealer who does not have the particular car a customer is seeking could, of course, order that car from the manufacturer but in these days of rapid, impatient, impulsive life, the customer would

probably refuse to wait the weeks, perhaps months, that would pass until the car arrived and he would, therefore, go to another dealer. The first dealer, in order to retain the customer, thus quickly endeavors to ascertain if he can pick up the car from some other dealer. The Car Locator System facilitates his search. When the car is found he communicates with Dealer B, as we have stated. Dealer B then turns over the car to A but he will make no profit on the transaction because he either receives from A another car in exchange or the money he has actually paid out himself, as we have also already indicated. If cash is exchanged, Dealer B records this in his books, but the amount involved really is not part of his business receipts because it merely represents the car which was in his lot and is now there no longer.

The legal question involved in this appeal before us is whether Dealer B, who accommodates Dealer A, must pay a mercantile tax on the money received from A. Dealer B, in this case on appeal, represents the Ed McKean Oldsmobile Company and the McKean Oldsmobile Company (hereinafter referred to collectively as McKean). The City of Pittsburgh and the School District of Pittsburgh have attempted to tax such moneys as receipts from sales at wholesale and they have appealed from a decision of the County Court of Allegheny County which held that the receipts are not taxable under the governing mercantile laws, ordinances and regulations.[1]

---

[1] The City of Pittsburgh, pursuant to the authority of the Act of June 25, 1947, P. L. 1145, 53 PS §6851, as amended, in 1947 enacted (and has since reenacted annually) an ordinance providing for the issuance of mercantile licenses and the imposition of mercantile license taxes upon every person engaged in the City of Pittsburgh in the occupation or business of vendor or dealer in goods, wares and merchandise; the tax, in the case of a wholesale dealer or vendor to be at the rate of one mill on each dollar of the volume of the annual gross business transacted by him.

Both the City of Pittsburgh and the School District of the City of Pittsburgh (the appellants here) admit that they cannot tax Dealer B, which is McKean, in the instance where McKean receives back in inventory a car in even exchange for the car transferred to Dealer A.[2]

However, it is their contention that when McKean receives payment in money this money must be included in its taxable gross receipts and that mercantile tax must be paid on it at the wholesale vendor's rate. Law, logic and common sense cannot support such an obviously unfair proposition. If the physical exchange of cars does not constitute a sale, why would the transfer of cost price, which still represents an even exchange, be a selling transaction? McKean's position does not change whether it receives a car in exchange for another car or is reimbursed for the cost of the car it furnished Dealer A. In fact, McKean may even be in a worse position in such a transaction if it financed the purchase of the exchanged car since it receives no reimbursement for interest payments on the loan which enabled it to obtain the funds with which to make the original purchase. In addition, McKean must, in

---

With regard to the School District of the City of Pittsburgh, the Act of June 20, 1947, P. L. 745, 24 PS §582.1 et seq., imposes an annual mercantile tax on every person engaged in the School District of the City of Pittsburgh in the occupation or business of vendor or dealer in goods, wares and merchandise; the tax in the case of a wholesale vendor or dealer to be at the rate of ½ mill on each dollar of the volume of the annual gross business transacted by him.

[2] Regulation 6(a) of the School District of Pittsburgh Mercantile License Tax Regulations provides: "Where a dealer transfers property, such as an automobile, to another dealer with the understanding that property of identical description, will be returned at a subsequent date, such transaction does not constitute a sale and the value of the property exchanged need not be included in the tax base of either dealer."

transactions of this character, undergo the inconvenience, loss of time and even additional expenditure of money in order to replenish its inventory. It must be quite clear that whether McKean is reimbursed via another car or by payment of invoice cost, it is not making a "sale" within the intendment of the taxing laws, ordinances and regulations. Receipts from such transactions which are performed solely for the accommodation of other dealers cannot be considered as receipts from the business in which the accommodating dealer is engaged. Its business is to sell cars for a profit at retail to customers, not to exchange cars for other cars or at cost price. The only indirect benefit possibly accruing to McKean is that it might receive similar treatment from other dealers in the event it should be seeking a particular car.

The reasoning which would apply in a situation like the one under discussion found expression in the case of *H. J. Heinz Company v. School District of Pittsburgh,* 170 Pa. Superior Ct. 441. There the Heinz Company operated three dining rooms or cafeterias on its premises for the convenience and benefit of its employees, the prices charged being lower than those charged in commercial restaurants. They were only sufficient to permit the Company to recover the direct costs of the food and labor involved in the operation of the dining places. Both the City of Pittsburgh and the School District of the City of Pittsburgh sought to tax the amount of Heinz's gross sales of food involved in this operation. The Superior Court held that the Heinz Company's business was the manufacture and processing of foods in wide variety, that the operation of the dining rooms and cafeterias was only incidental to its principal activity and that it only "indirectly" benefited its main business. Said the Superior Court: "A Mercantile License Tax as its name implies is a levy on the privilege of conducting a commercial enterprise

for profit. It is not a property tax. The benefits accruing to the appellee from maintaining employe cafeterias are all indirect. The Heinz Company in no sense is engaged in the restaurant business for profit. Neither the School District nor the City of Pittsburgh therefore had authority to levy these taxes based upon the sales of food in appellee's restaurants . . ."

Thus also, even if the transfer by McKean of a car to another dealer and the receipt of invoice cost for that car is generically called a sale, it is not such a sale encompassed within the aim, perspective and purpose of mercantile tax laws. This conclusion is reached not merely because no profit arises from the transaction[3] but because the transaction is not within McKean's line of business, which is to sell cars at retail prices to customers.

Let us look at another case shedding illumination on this interesting phase of business and commercial transactions.

In *Philadelphia School District v. Frankford Grocery Company,* 376 Pa. 542, the Frankford Grocery Company was formed as a corporation for the purpose of creating a purchasing agency for several retail grocers whereby they could compete with the larger businesses by obtaining the savings that accompany quantity buying. This Court held that the Company was not subject to tax on the receipts received from the member retail grocers for merchandise withdrawn by them. "The matter thus reduces itself to the question whether the defendant *in its cooperative functioning* is carrying on a business for gain or profit, and therefore within the purview of the tax . . . That it pays the tax on some of its activities does not prevent immunity from tax on its nonprofit activities (H. J. Heinz Company v. School District of Pittsburgh, 170 Pa. Superior

---

[3] *Beaver County Cooperative Association's Appeal,* infra; *Com. v. McKinley-Gregg Auto. Co.,* infra.

Ct. 441, 87 A. 2d 85 (1952)) to the same extent that a nonprofit corporation may be liable for the tax on some of its activities (Board of Christian Education of The Presbyterian Church v. Philadelphia School District, 171 Pa. Superior Ct. 610, 91 A. 2d 372 (1952))." (Emphasis supplied)

That decision and our later decision in *Jefferson Grocery Company v. Pittsburgh School District*, 394 Pa. 110, which did have to do with the School District's mercantile tax, as well as the decision in the *Heinz* case, supra, clearly demonstrate that in construing taxing laws, all transactions which take place solely for the accommodation of either members or employees of the taxpayer, are only incidental to the main functions of the taxpayer's business and which create only an indirect benefit at most to the taxpayer in that main function, are not taxable, even though the receipts from his main business are taxable.

In the case of *Jefferson Grocery Company v. Pgh. School District*, 394 Pa. 110, just mentioned, the company was formed for the specific purpose of creating a purchasing agency for the Sparkle chain of markets and to effectuate substantial savings by quantity purchases for all the retail stores in the chain. We said in that case that "It (Jefferson Grocery Company) made no profit and never paid any dividends; it entered into leases for the buildings housing the retail stores; it negotiated collective bargaining agreements; it kept the books for the individual stores; and it obtained blanket liability and fire insurance policies. In this manner, both in coordinated buying and management, Sparkle was able to compete with the food chains operating in the same general vicinity."

In determining whether or not the receipts of the Jefferson Grocery Company were subject to mercantile tax of the City of Pittsburgh and the School District of the City of Pittsburgh, we said: "The ordinance and

the act impose taxes only upon a person who sells merchandise at wholesale or retail. Sparkle Markets already had paid the taxes imposed on them as a retailer. Can it now be said that Jefferson is subject to the tax in the 'wholesale' category? The evidence indicated that the original records of their merchandise distribution were entitled 'Warehouse Shipments' and *the shipped merchandise was charged to the respective outlets at cost.* The central buying agency served only the retail stores in the chain. In the trade Jefferson was recognized as a retail chain and not as a wholesaler. It purchased merchandise at prices set for retail chain stores. . . . The complete lack of evidence that Jefferson conducted any sales transactions between itself and the individual stores or anyone else, and the positive evidence of the actual functions of Jefferson, supports our conclusion that Jefferson did not sell and, hence, is not taxable as a 'wholesaler'." Certainly, if the Jefferson Grocery Company could purchase merchandise in its corporate name and then transfer that merchandise to the Sparkle markets at cost, without the transaction being considered a sale and without the Jefferson Grocery Company being considered a wholesaler, even though such transfers were the very business for which Jefferson had been formed, then certainly, the accommodating transfer of an automobile by one dealer to another dealer in the same automobile division at invoice price cannot be considered a sale at wholesale, taxable under the mercantile laws, ordinances and regulations here governing.

The appellants strongly rely on *Beaver County Co-Operative Association's Appeal,* 118 Pa. Superior Ct. 305, in support of their position but it is to be noted that in that case the Court pointed out it was not being called upon to decide the taxability of business done solely for the accommodation of members of the co-operative organization. That case involved sales made

to non-members at cost plus overhead which sales were part of the very business for which the Cooperative Association had been formed. The fact that it made no profit from such sales was immaterial, as it would be in this case if the receipts sought to be taxed were from the business in which the dealers engaged in, to wit: from sales made by the dealers to their customers at retail. If the receipts were from such sales, the fact that they did not represent any profit to the dealers would be immaterial; the gross receipts would still be taxable.

The case of *Commonwealth v. McKinley-Gregg Auto. Company,* 345 Pa. 544, additionally relied upon by appellants, also involved receipts from sales which formed the very business in which the taxpayer was engaged, and the Court properly applied the rule that the lack of profit did not govern taxability.

The City and the School District will not be denied their tax when it is due. They will make their collections when the accommodated dealers sell to their customers the vehicles they have received from McKean. We cannot sanction their receiving taxes twice on what really constitutes but one complete transaction.

Orders affirmed.